## CANTINI et al. v. TILLMAN et al.

(Circuit Court, D. South Carolina. March 1, 1893.)

1. INTOXICATING LIQUORS—MANUFACTURE AND SALE—STATE REGULATIONS.

   There is no inherent right of a citizen to sell intoxicating liquors by retail, and the South Carolina statute of December 24, 1892, entitled "An act to prohibit the manufacture and sale of intoxicating liquors as a beverage within this state, except as herein permitted," is, in its general scope and purpose, within the police power of the state.

2. SAME—CONSTITUTIONAL LAW.

   In view of the operation of the act of congress of August 8, 1890, (26 St. at Large, p. 313,) providing that any liquors imported into a state shall immediately become subject to its police laws, even while in the original packages of importation, which act is valid as a regulation of commerce, the South Carolina statute above referred to is not in contravention of

Const. U. S. art. 1, § 10, forbidding the states to pass any laws impairing the obligation of contracts, or, without the consent of congress, to levy any imposts or duties on imports or exports, except such as are necessary for executing its inspection laws. In re Rahrer, 11 Sup. Ct. Rep. 865, 140 U. S. 545, followed.

**3. SAME—DISCRIMINATION.**

Nor is the act in contravention of the constitutional provisions (article 4, § 2, and the fourteenth amendment) forbidding any state to discriminate against citizens of other states or citizens of the United States.

**4. SAME—DUE PROCESS OF LAW.**

Nor is the act in contravention of the provision of the fifth amendment, forbidding the taking of property without due process of law, and the taking of private property for public use, without just compensation. Transportation Co. v. Chicago, 99 U. S. 635, and Mugler v. Kansas, 8 Sup. Ct. Rep. 273, 123 U. S. 659, followed.

**5. SAME—ITALIAN TREATY.**

Under articles 1 and 2 of the treaty between the United States and Italy, Italian subjects have no greater rights to carry on trade and traffic in liquors within a state than a citizen of the United States has.

**6. CONSTITUTIONAL LAW—TITLES OF LAWS.**

Section 20, art. 2, of the constitution of South Carolina requires that every act or resolution shall relate to but one subject, and that shall be expressed in its title. *Held*, that the act passed December 24, 1892, entitled "An act to prohibit the manufacture and sale of intoxicating liquors as a beverage within this state, except as herein provided," containing provisions for the regulation of the traffic, conforms to this section, as the "regulation" of the traffic is the "prohibition" of it, except in accordance with certain rules.

**7. SAME—AMENDMENT OF BILL.**

It is a settled rule of parliamentary law in South Carolina that, so long as the enacting words remain in a bill, it can be amended to any extent, even by striking out all after the enacting words, and by inserting other words; and, when a bill passed by the house is thus amended by the senate, such amendment may be concurred in by the house without the three readings required on the original passage.

In Equity. Bill by Geromio Cantini and Anania Cantini against Benjamin R. Tillman and W. T. C. Bates, governor and treasurer, respectively, of South Carolina, to enjoin them from carrying out and executing the provisions of the law relating to the manufacture and sale of intoxicating liquors, passed August 8, 1890, by the state legislature. Bill dismissed.

The bill contained the following averments:

"(1) That your orators are subjects and aliens and citizens of the kingdom of Italy, and have been since the year 1874, and now are, copartners under the firm name of G. & A. Cantini, residing in the said city of Charleston, and there doing business or trading as importers and vendors of spirituous, vinous, and malt liquors, among other things, and also have been, and now are, taxpayers of the state of South Carolina.

"(2) That the defendants, the said Benjamin R. Tillman and W. T. C. Bates, are residents and citizens of the said state of South Carolina, and are officers of the said state, to wit, the said Benjamin R. Tillman is governor, and the said W. T. C. Bates is treasurer.

"(3) That the general assembly of the state of South Carolina has recently, to wit, on or about the 24th day of December, 1892, attempted to pass an act entitled 'An act to prohibit the manufacture and sale of intoxicating liquors as a beverage within this state, except as herein provided,' which was approved December 24, 1892, and a copy whereof, marked 'Exhibit A,' is hereunto annexed as part and parcel hereof, and to which your orators ask to be

allowed to refer as fully and as often as they may desire or deem necessary:[1] and that the said general assembly at the same time passed an act entitled 'An act to raise supplies and make appropriations for the fiscal year commencing November 1, 1892,' whereby a tax of five and one half mills (an increase of the tax levied in former years) is levied for the 'purpose of meeting appropriations to defray the current expenses of the government for the fiscal year commencing November 1, 1892, and to meet such other indebtedness as has been or shall be provided for in the several acts and joint resolutions passed by this general assembly at the regular session of 1892, providing for the same,' and whereby said tax is made 'due and payable from the 15th day of October to the 31st day of December, 1893.'

"(4) That your orators are informed and believe that the said Benjamin R. Tillman did, within thirty days from the approval of the said act first above mentioned, appoint a commissioner, as required by section 2 thereof, but that said commissioner declined the said appointment, and that the said Benjamin R. Tillman has not yet appointed another, and is about to and will make such appointment unless restrained by competent authority. That your orators are informed and believe that the said W. T. C. Bates is about to and will expend the sum of fifty thousand dollars, or some part thereof, as appropriated and provided for by section 18 of said act first above mentioned, unless restrained by competent authority.

"(5) And your orators aver and charge that the said act first above mentioned is unconstitutional, null, and void as follows, to wit: (a) Because the said act is in violation of and repugnant to section 10, art. 1, of the constitution of the United States of America, as well as the treaty between the United States of America and the kingdom of Italy, proclaimed November 23, 1871, which said treaty is now in force, and is to be found at large at pages 845 et seq. of the 17th volume of the United States Statutes at Large. (b) Because the said act is in violation of and repugnant to section 2, art. 4, of the constitution of the United States of America, as well as to article 14 of the additions and amendments to the constitution of the United States of America, and also section 12, art. 1, of the constitution of the state of South Carolina. (c) Because the said act is in violation of and repugnant to the third clause of section 8, art. 1, of the United States constitution. (d) Because the said act is in violation of and repugnant to article 5 of the additions to and amendments of the constitution of the United States of America. (e) Because the said act is in violation of and repugnant to section 21, art. 1, of the constitution of the state of South Carolina. (f) Because the said act is in violation of and repugnant to section 21, art. 2, of the constitution of the state of South Carolina. (g) Because the said act is in violation of and repugnant to section 20, art. 2, of the constitution of the state of South Carolina. (h) Because the said act is in violation of and repugnant to section 18, art. 2, of the constitution of the state of South Carolina.

"(6) And your orators further complain and say that, if the said act first above mentioned be carried into operation and enforced, your orators will be damaged irreparably, and to an amount not less than five thousand dollars.

"To the end, therefore, that the said Benj. R. Tillman, as governor aforesaid, may be perpetually restrained and enjoined from appointing a commissioner as provided in section 2 of the act first above mentioned, and that the said W. T. C. Bates, as treasurer, as aforesaid, may be perpetually restrained and enjoined from expending the sum of fifty thousand dollars, or any part thereof, as appropriated and provided for in section 18 of the said act first above mentioned, and that they be restrained and enjoined accordingly likewise pending this suit, and that your orators may have such other or further relief, or both, as to this honorable court shall seem meet and proper, and the nature of the case may require, may it please your honors to grant unto your orators a writ of injunction, and also a temporary order of injunction, as above set forth, and also a writ of subpoena, to be directed to the said Benjamin R. Tillman and W. T. C. Bates, commanding them at a certain day, and under a certain penalty, to be and appear before this honorable court,

---

[1] See note at end of case, where the act will be found in full.

and to make full, true, and direct answer to all and singular the premises, (answer under oath being hereby expressly waived,) and further to stand to, abide, and perform such order, directions, and decree herein as this honorable court shall deem meet and agreeable to equity and good conscience."

Von Kolnitz & Bacot, for complainants.

SIMONTON, District Judge.   This is a proceeding to test the constitutionality of an act of the general assembly of South Carolina, commonly known as the "Dispensary Act." The purpose of the act, as expressed in its title, is to prohibit the manufacture and sale of intoxicating liquors as a beverage within this state, except as herein provided.   There can be no doubt that the purpose thus expressed in this act is lawful.   The supreme court of the United States, in Crowley v. Christensen, 137 U. S. 91, 11 Sup. Ct. Rep. 15, say:

"By the general concurrence of opinion of every civilized community, there are few sources of crime and misery to society equal to the dramshop, where intoxicating liquors in small quantities, to be drunk at the time, are sold indiscriminately to all parties applying. The statistics of every state show a greater amount of crime and misery attributable to the use of ardent spirits obtained at these retail liquor saloons than to any other source. The sale of such liquors in this way has therefore been at all times, by the courts of every state, considered as the proper subject of legislative regulation. Not only may a license be exacted from the keeper of the saloon before a glass of his liquors can be thus disposed of, but restrictions may be imposed as to the class of persons to whom they may be sold, and the hours of the day, and the days of the week, on which the saloons may be opened. Their sale in that form may be absolutely prohibited. It is a question of public expediency and public morality, and not of federal law. The police power of the state is fully competent to regulate the business, to investigate the evils, or to suppress it entirely. There is no inherent right in a citizen to thus sell intoxicating liquors by retail. It is not a privilege of a citizen of the state, or of a citizen of the United States. As it is a business attended with danger to the community, it may, as has been already said, be entirely prohibited, or be permitted under such conditions as will limit to the utmost its evils. The manner and extent of regulation rests in the discretion of the governing power. * * * It is a matter of legislative will only."

The act in question, in its first section, declares—

"That from and after the first day of July, A. D. 1893, the manufacture, sale, barter, or exchange, or the keeping or offering for sale, barter, or exchange, within this state, of any spirituous, malt, vinous, fermented, or other intoxicating liquors, or any compound or mixtures thereof, by whatever name called, which will produce intoxication, by any person, business firm, corporation, or association, shall be regulated and conducted as provided in this act."

As we have seen, this is within the police power of the state, and is a matter of legislative will only.   The general scope and purpose of the act being thus lawful, are any of its provisions in violation of the constitution of the United States?

The proceedings allege that the act is in violation of, and repugnant to, section 10, art. 1, of the constitution of the United States. This section has numerous provisions.   Those which are sought to be applied to this case are the clauses forbidding any state to pass any ex post facto law, or law impairing the obligation of contracts, and the provisions forbidding a state, without the consent of con-

gress, to levy any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws. The prohibition as to ex post facto laws applies only to crimes. Watson v. Mercer, 8 Pet. 88; Railroad Co. v. Nesbit, 10 How. 395; Locke v. New Orleans, 4 Wall. 172; Carpenter v. Com., 17 How. 456.

There is no provision of this act open to this objection. The question on the other provisions stated was made before the supreme court in Re Rahrer, 140 U. S. 545, 11 Sup. Ct. Rep. 865. On 8th August, 1890, (26 St. p. 313,) congress had enacted—

"That all fermented, distilled, or other intoxicating liquors or liquids transported into any state or territory, or remaining therein, for use, consumption, sale, or storage therein, shall, upon arrival in such state or territory, be subject to the operation and effect of the laws of such state or territory, enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory, and shall not be exempt therefrom by reason of being introduced in original packages or otherwise."

The petitioner had imported liquor into the state of Kansas in separate packages, and sold a part of it in the original package. The law of Kansas forbade the sale of liquors except for medical purposes, and forbade any one to sell for these purposes without first having procured a druggist's permit therefor from the probate judge of the county. The supreme court, after an exhaustive argument, sustained the constitutionality of this act of congress, and declared that under its operation the law of Kansas was not in conflict with section 10, art. 1, of the constitution.

Another objection to the act is that it is in violation of section 2, art. 4, of the constitution of the United States, and of the fourteenth amendment, in that this act discriminates both as to persons and products. Section 2, art. 4, declares that the citizens of each state shall be entitled to all the privileges and immunities of the citizens of the several states; and the fourteenth amendment declares that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States. But we have seen that the supreme court, in Crowley v. Christensen, 137 U. S. 91, 11 Sup. Ct. Rep. 15, has declared that there is no inherent right in a citizen to sell intoxicating liquors by retail. It is not a privilege of a citizen of a state or of a citizen of the United States. In Mugler v. Kansas, 123 U. S. 659, 8 Sup. Ct. Rep. 296, the court say:

"Prior to the adoption of the fourteenth amendment, state enactments regulating or prohibiting the traffic in intoxicating liquors raised no question under the constitution of the United States. Such legislation was left to the discretion of the respective states, subject to no other limitations than those imposed by their own constitutions, or by the general principles supposed to limit all legislative power. Bartemeyer v. Iowa, 18 Wall. 129.

Referring to the contention that the right to sell intoxicating liquors was secured by the fourteenth amendment, that case says:

"So far as such a right exists, it is not one of the rights growing out of citizenship of the United States."

In Beer Co. v. Massachusetts, 97 U. S. 25, it was said that as a measure of police regulation, looking to the preservation of public morals, a state law prohibiting the manufacture and sale of intoxicating liquors is not repugnant to any clause of the constitution of the United States. And in Foster v. Kansas, 112 U. S. 201, 5 Sup. Ct. Rep. 97, it is declared to be no longer an open question. All these cases are quoted and reaffirmed in the case of Mugler v. Kansas. The rubric of that case is as follows:

"State legislation which prohibits the manufacture of spirituous, malt, vinous, fermented, or other intoxicating liquors within the limits of the state, to be there sold or bartered for general use as a beverage, does not necessarily infringe any right, privilege, or immunity secured by the constitution of the United States, or by the amendments thereto. The prohibition by the state of Kansas, in its constitution and laws, of the manufacture or sale within the limits of the state of intoxicating liquors for general use there as a beverage, is fairly adapted to the end of protecting the community against the evils which result from excessive use of ardent spirits, and is not subject to the objection that, under the guise of police regulations, the state is aiming to deprive the citizen of his constitutional rights. Lawful state legislation, in the exercise of the police powers of the state, to prohibit the manufacture and sale within the state of spirituous, malt, vinous, fermented, or other intoxicating liquors, to be used as a beverage, may be enforced against persons who at the time happen to own property whose chief value consists in its fitness for such manufacturing purposes, without compensating them for the diminution in its value resulting from such prohibitory enactments."

The fourteenth amendment is not designed to interfere with the power of the state, sometimes termed its "police power," to prescribe regulations to promote health, peace, morals, education, and good order of the people. Barbier v. Connolly, 113 U. S. 27, 5 Sup. Ct. Rep. 357. Now, every greater includes the less. If the manufacture and sale can be entirely prohibited, they can be prohibited unless certain rules are complied with.

Another objection to the act is that it is repugnant to the third clause of section 8, art. 1, of the constitution of the United States, giving congress the power to regulate commerce with foreign nations. We have seen, however, that by the act of 1890 congress has expressly recognized and affirmed the right of the states to pass an act like this; and this act of congress, therefore, is a regulation by it of commerce.

The last objection, because of repugnancy to the constitution of the United States, is that the act is in violation of the fifth amendment, which forbids the taking of property without due process of law, and the taking of private property for public use without just compensation. With regard to this last objection, it is disposed of by two cases from the supreme court. In Transportation Co. v. Chicago, 99 U. S. 635:

"Acts done in the proper exercise of governmental powers, and not directly encroaching on private property, although their consequences may impair its use, do not entitle the owner of such property to compensation from the state or its agents, or give him a right of action."

And in Mugler v. Kansas, above quoted:

"Lawful state legislation, in the exercise of the police power of the state, to prohibit the manufacture and sale within the state of spirituous, malt,

vinous, fermented, or other intoxicating liquors to be used as a beverage, may be enforced against persons who at the time happen to own property whose chief value consists in its fitness for such manufacturing purposes, without compensating them for the diminution of its value resulting from such prohibitory enactments. A prohibition upon the use of property for purposes declared to be injurious to the health, morals, or safety of the community is not an appropriation of property for the public benefit, in the sense in which the taking of property by the exercise of eminent domain is such taking or appropriation."

Is it without due process of law? Every section of this act, in which penalties are imposed, provides for a judicial examination and conviction in a court of justice. "Law, in its regular course of administration through courts of justice, is due process, and, when secured by the law of the state, the constitutional requisition is satisfied. Due process is so secured by laws operating on all alike, and not subjecting the individual to the arbitrary exercise of the powers of the government, unrestrained by the established principles of private right and distributive justice." Caldwell v. Texas, 137 U. S. 692, 11 Sup. Ct. Rep. 224. See, also, Freeland v. Williams, 131 U. S. 406, 9 Sup. Ct. Rep. 763. Even the destruction of property in the exercise of the police power of a state, when such property is used in violation of law, in maintaining a public nuisance, is not taking of property for public use, and does not deprive the owner of it without due process of law. Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. Rep. 273.

The complainants object to the act: Because it violates the constitution of the state of South Carolina, (section 21, art. 1,) which forbids any ex post facto law, or law impairing the obligation of contracts. This has been disposed of. Because it is repugnant to sections 21 and 20 of the constitution of South Carolina. Section 20, art. 2, requires that every act or resolution shall relate to but one subject, and that shall be expressed in its title. The title of the act is, "To prohibit the manufacture and sale of intoxicating liquors as a beverage within this state, except as herein provided." I have read the act through carefully, and cannot see how this objection can prevail. See San Antonio v. Mehaffy, 96 U. S. 312; Woodson v. Murdock, 22 Wall. 351. Regulating a thing is the prohibition of it, except in accordance with certain rules. This act prohibits the sale and manufacture of intoxicating liquors except under certain regulations therein provided.

The twenty-first section and the eighteenth will be considered together. They both go to this point. The house of representatives had duly passed a bill on the subject of the sale of intoxicating liquors, and had sent it to the senate. The senate amended this bill by striking out all after the enacting words, and by substituting the contents of this act. When the bill so amended went into the house, it concurred in the amendment, but did not read it three times on three several days. It is a settled principle of parliamentary law in this state that, so long as the enacting words remain in a bill, it can be amended to any extent, even by striking out all after the enacting words, and by inserting other words as a substitute. The constitution does not require every word

in an act to have received three readings on three several days If it did, no important bill ever became or can become a law. Very few important bills are not amended on their second reading, and such amendments, when adopted, are not read three times on three several days. Sometimes, in the house, by unanimous consent, and in the senate, upon notice, bills are amended on the third reading. Nothing is more common than to amend by striking out one section and by inserting another, or by striking out several sections and by inserting one or several; and if it be competent to amend by striking out and inserting one, two, three, four sections, clearly it is competent to strike out all the sections, and to insert others, in pari materia. Striking out all after the enacting words, and inserting, is nothing but an amendment, and is governed by the same rules as other amendments. I do not see any repugnancy of this act with the constitution of the state of South Carolina.

Even if, upon close examination, it should be discovered that one section, the twenty-fifth, is in conflict with the interstate commerce law, and on this point no opinion is expressed, still this would not affect the other sections of the act, and its main scope and purpose,—the suppression of sales of intoxicating liquors except by and through the agency of the state. Hills v. Bank, 105 U. S. 319. And it is clear that the rule asked for could not be granted.

It is urged in behalf of these complainants that they are Italian subjects, and are protected by the treaty stipulations between Italy and the United States. The language of the treaty on this point is as follows:

"Art. 2. The citizens of each of the high contracting parties shall have liberty to travel in the states and territories of the other; to carry on trade, wholesale and retail; to hire and occupy houses and warehouses; to employ agents of their choice; and generally to do anything incident to or necessary for trade, upon the same terms as the natives of the country, submitting themselves to the laws there established.

"Art. 3. The citizens of each of the high contracting parties shall receive in the states and territories of the other the most constant protection and security for their persons and property, and shall enjoy in this respect the same rights and privileges as are or shall be granted to the natives, on their submitting themselves to the conditions imposed upon the natives."

Under these articles the complainants have the same rights as citizens of the United States. It would be absurd to say that they had greater rights. We have seen that the right to sell intoxicating liquors is not a right inherent in a citizen, and is not one of the privileges of American citizenship; that it is not within the protection of the fourteenth amendment; that it is within the police power. The police power is a right reserved by the states, and has not been delegated to the general government. In its lawful exercise, the states are absolutely sovereign. Such exercise cannot be affected by any treaty stipulations. "Salus populi suprema lex."

There are other and much more grave questions in this case, affecting the jurisdiction of this court. The conclusions reached render the discussion of them at this time unnecessary. It is best to come

at once to a final decree. Let one be entered, refusing the rule, and dismissing the bill for want of equity.

NOTE.

An Act to Prohibit the Manufacture and Sale of Intoxicating Liquors as a Beverage Within this State, Except as Herein Permitted.

Section 1. Be it enacted by the senate and house of representatives of the state of South Carolina, now met and sitting in general assembly and by the authority of the same, that on and after the first day of July, A. D. 1893, the manufacture, sale, barter, or exchange, or the keeping or offering for sale, barter, trade, or exchange, within this state, of any spirituous, malt, vinous, fermented, or other intoxicating liquors, or any compound or mixtures thereof, by whatever name called, which will produce intoxication, by any person, business firm, corporation, or association, shall be regulated and conducted as provided in this act.

Sec. 2. The governor shall, within thirty days from the approval of this act, appoint a commissioner, and all subsequent appointments, which appointments shall be submitted to the senate at its next session for its approval, believed by him to be an abstainer from intoxicants, who shall, under such rules and regulations as may be made by the state board of control, purchase all intoxicating liquors for lawful sale in this state, giving preference to manufacturers and brewers doing business in this state, and furnish the same to such persons as may be designated as dispensers thereof, to be sold as hereafter prescribed in this act. Said commissioner shall reside and have his place of business in the city of Columbia, in this state, and hold his office two years from appointment, and until another is appointed in his stead, subject to removal for cause by the state board of control. He shall qualify and be commissioned the same as other officers, and receive an annual salary of $1,800, payable at the same time and in the same manner as is provided for the payment of salaries of state officers. He shall be allowed a bookkeeper, who shall be paid in the same manner a salary of $1,200, and such other assistants as, in the opinion of the board of control, may be deemed necessary. He shall not sell to the county dispensers any intoxicating or fermented liquors except such as have been tested by the chemist of the South Carolina College and declared to be pure and unadulterated: provided, that said state board of control shall have authority to appoint such assistants as they may find necessary to assist the chemist of the South Carolina College in making the analysis required by this act, and the said state board of control may fix such reasonable compensation, if any, as they may deem proper for the services rendered by such chemists or such assistants. The state commissioner shall not receive from said county dispensers for such liquors sold to them more than 50 per cent. above the net cost thereof, and all amounts so received by him from said sales shall be by him paid over to the treasurer of the state monthly, under such rules as may be made by the state board of control to insure the faithful return of the same; and the state treasurer shall keep a separate account with said fund, from which the commissioner shall draw, from time to time, upon warrants duly approved by the said board, the amounts necessary to pay the expenses incurred in conducting the business of said agency. All rules and regulations governing the said commissioner in the purchase of intoxicating liquors, or in the performance of any of the duties of his office, where the same are not provided for by law, shall be prescribed by a state board of control, composed of the governor, the comptroller general, and the attorney general. He shall, before entering upon the duties of his office, execute a bond to the state treasurer, with sufficient sureties, to be approved by the attorney general, in the penal sum of $10,000 for the faithful performance of the duties of his office. In all purchases or sales of intoxicating liquors made by said commissioner, as contemplated in this act, the commissioner shall cause a certificate to be attached to each and every package containing said liquors, when the same is shipped to him from the place of purchase, or by him to the county dispensers, certified by his official signature and seal, which certificate shall state that the liquors contained in said package

have been purchased by him for sale within the state of South Carolina, or to be shipped out of the state, under the laws of said state; and without such certificate any package containing liquors which shall be brought into the state,.or shipped out of the state, or shipped from place to place within the state by any railroad, express company, or other common carrier, shall be regarded as intended for unlawful sale, and, upon conviction thereof, such common carrier shall be liable in a penalty of $500 for each offense, to be recovered against said common carrier in any court of competent jurisdiction by complaint proceedings to be instituted by the solicitor for any circuit with whom evidence of the violation may be lodged by any citizen having knowledge or information of the violation; and any person knowingly attaching or using such certificate without the authority of the commissioner, or any counterfeit certificate, for the purpose of securing the transportation of any intoxicating liquors into, out of, or within this state, in violation of law, shall, upon conviction thereof, be punished by a fine of not less than $500, and imprisonment in the penitentiary for not less than one year, for each offense. Said commissioner shall make a printed quarterly statement under oath, commencing August 1, 1893, of all liquors sold by him, enumerating the different kinds and quantity of each kind, the price paid and the terms of payment, and to whom sold; also the names of the parties from whom the liquor was purchased, and their place of business and date of purchase,—which statement shall be filed with the state board of control: provided, this section shall not apply to malt liquors shipped in cases or bottles thereof shipped in barrels.

Sec. 3. The state commissioners shall, before shipping any liquor to county dispensers, cause the same to be put into packages of not less than one half pint, nor more than five gallons, and securely seal the same; and it shall be unlawful for the county dispenser to break any such packages or open the same for any reason whatever. He shall sell by the package only, and the purchaser shall not open the same on the premises.

Sec. 4. It shall be the duty of the state board of control to appoint a county board of control, composed of three persons believed by said board not to be addicted to the use of intoxicating liquors, who shall hold their office for a term of two years, and until their successors are appointed. Said county board of control shall be subject to removal for cause by the state board of control. Said county board shall make such rules as will be conducive to the best management of the sale of intoxicating liquors in their respective counties: provided, all such rules shall be submitted to the state board and approved by them before adoption. Said county board of control shall qualify and be commissioned the same as other officers without fees therefor.

Sec. 5. If any county dispenser, or his clerk, shall purchase any intoxicating liquors from any other person or persons except the state commissioner, or if he or they, or any person or persons in his or their employ, or by his or their direction, shall sell or offer for sale any liquors other than such as have been purchased from the state commissioner, or shall adulterate or cause to be adulterated any intoxicating, spirituous, or malt liquors which he or they may keep for sale under this act, by mixing with the same any coloring matter or any drug or ingredient whatever, or shall mix the same with other liquors of different kind or quality, or with water, or shall sell or expose for sale such liquors so adulterated, knowing it to be such, he or they shall be guilty of a misdemeanor, and be fined in a sum of not less than two hundred dollars, or imprisoned in the county jail for not less than six months.

Sec. 6. That on and after the first day of July, 1893, no person, firm, association, or corporation shall manufacture for sale, sell, or keep for sale, exchange, barter, or dispense, any intoxicating liquors for any purpose whatever otherwise than as provided in this act. County dispensers, as herein provided, shall alone be authorized to sell and dispense intoxicating liquors, and all permits must be procured, as hereinafter provided, from the county board of control: provided, that no license for the sale of spirituous liquors now authorized to be granted by municipal authorities shall be of any force or effect after the 30th day of June, 1893, but licenses may be issued or extended to said 30th day of June, 1893, upon payment of one half of the annual license

required by the municipal and county authorities in cities or towns, where such licenses are or may be authorized to be issued: provided, further, that manufacturers of distilled, malt, or vinous liquors who are now doing business in the state shall be allowed to sell to no person in this state except to the state commissioner and to parties outside of the state. Every package, barrel, or bottle of such liquors shipped beyond the limits of this state shall have thereon the certificate of the state commissioner allowing same, and otherwise it shall be liable to confiscation, and the railroad carrying it shall be punished as in section 2: and provided, that any person shall have the right to make wine for his or her own use from grapes or other fruit.

Sec. 7. Applications for position of county dispensers shall be by petitions signed and sworn to by the applicant, and filed with the county board of control at least ten days before the meeting at which the application is to be considered, which petition shall state the applicant's name, place of residence, in what business engaged, and in what business he has been engaged two years previous to filing petition; that he is a citizen of the United States and of South Carolina; that he has never been adjudged guilty of violating the law relating to intoxicating liquors, and is not a licensed druggist, a keeper of a hotel, eating house, saloon, restaurant, or place of public amusement; and that he is not addicted to the use of intoxicating liquors as a beverage. This permit or renewal thereof shall issue only on condition that the applicant shall execute to the county treasurer a bond in the penal sum of three thousand dollars, with good and sufficient sureties, conditioned that he will well and truly obey the laws of the state of South Carolina now or hereafter in force in relation to the sale of intoxicating liquors; that he will pay all fines, penalties, damages, and costs that may be assessed or recovered against him for violation of such laws during the term for which permit or renewal is granted, and will not sell intoxicating liquors under his permit at a charge exceeding fifty per cent. above the cost thereof. Said bond shall be for the use of the county or any person or persons who may be damaged or injured by reason of any violation on the part of the obligor of the law relating to intoxicating liquors purchased or sold during the term for which said permit or the renewal thereof is granted. The said bond shall be deposited with the county treasurer, and suit thereon shall be brought at any time by the solicitor or any person for whose benefit the same is given; and in case the conditions thereof, or any of them, shall be violated, the principal and sureties thereon shall also be jointly and severally liable for all civil damages, costs, and judgments that may be obtained against the principal in any civil action brought by wife, child, parent, guardian, employer, or other person, under the provision of the law. All other moneys collected for breaches of such bond shall go into the county treasury. Said bond shall be approved by the county board of control under the rules and laws applicable to the approval of official bonds.

Sec. 8. There may be one county dispenser appointed for each county, whose place of business shall be at the county seat of said county, except the city of Charleston, for the county of Charleston, where there may be ten dispensers, and except for the city of Columbia, for the county of Richland, where there may be three dispensers appointed, whose place of business shall be located in such sections of said cities as will be most convenient for the accommodation of residents thereof. At least ten days before the first day of the meeting at which the applications for the position of county dispenser are considered, the applicant shall file with the county board of control, and a copy thereof with the clerk of court, in support of the application, such a petition as is provided for in section 7, signed by a majority of the freehold voters of the incorporated town or city in which the permit is to be used, and each person aforesaid shall sign said petition by his own true name and signature, and state that each, before signing, has read said petition, and understands the contents and meaning thereof, and is well and personally acquainted with the applicant: provided, that, in the judgment of the county board of control, other dispensaries may be established in other towns in any county.

Sec. 9. If the application for the position of county dispenser be granted, it shall not issue until the applicant shall make and subscribe on oath before the clerk of the county board of control, which shall be indorsed upon the bond, to

the effect and tenor following: "I, ——, do solemnly swear (or affirm) that I will well and truly perform all and singular the conditions of the within bond, and keep and perform the trust confided in me to purchase, keep, and sell intoxicating liquors. I will not sell, give, or furnish to any person any intoxicating liquors otherwise than is provided by law; and especially I will not sell or furnish intoxicating liquors to any person who is not known to me personally or duly identified, nor to any minor, intoxicated person, or persons who are in the habit of becoming intoxicated; and I will make true, full, and accurate returns to the county board of control the first Monday of each month of all certificates and requests made to or received by me as required by law during the preceding month; and such returns shall show every sale and delivery of such liquors made by or for me during the month embraced therein, and the true signature to every request received and granted; and such returns shall show all the intoxicating liquors sold or delivered to any and every person as returned." Upon taking said oath and filing bond as hereinbefore provided, the county board of control shall issue to him a permit authorizing him to keep and sell intoxicating liquors, as in this act provided; and every permit so granted shall specify the building, giving street and number, or location, in which intoxicating liquors may be sold by virtue of the same, and the length of time in which the same shall be in force, which in no case shall exceed twelve months. Permits granted under this act shall be deemed trusts reposed in the recipients thereof, not as a matter of right, but of confidence, and may be revoked upon sufficient showing by order of the county board of control; and upon the removal of any county dispenser, or upon demand of the county board of control, he shall immediately turn over to the said county board of control all liquors and other property in his possession belonging to the state or county. Said county board of control shall be charged with the duty of prosecuting the county dispenser or any of his employes who may violate any of the provisions of this act.

Sec. 10. The county board of control shall use as their office the office of the county commissioners of their respective counties, and the clerk of the board of county commissioners shall serve as their clerk. They shall preserve, as part of the records and files of their office, all petitions, bonds, and other papers pertaining to the granting or revocation of permits, and keep suitable books in which bonds and permits shall be recorded. The books shall be furnished by the county like other public records. The county board of control shall designate or provide a suitable place in which to sell the liquors, and shall furnish or grant permits to purchase from the state commissioners such liquors as shall be necessary. The members of the county board of control shall meet once a month, or oftener on the call of the chairman, and for their service they shall each receive a per diem of $2, and 5 cents mileage each way, and their clerk shall receive $2 per day for the days actually employed as such, but they shall not receive compensation for more than thirty days in any one year. They shall, upon the approval of the state board of control, employ such assistants for the county dispenser as may be necessary. The county dispenser and his associates shall receive such compensation as the state board of control may determine. All profits, after paying all expenses of the county dispensary, shall be paid one half to the county treasury, and one half to the municipal corporation in which it may be located; such settlements to be made monthly.

Sec. 11. Before selling or delivering any intoxicating liquors to any person, a request must be presented to the county dispenser, printed or written in ink, dated of the true date, stating the age and residence of the signer, for whom and whose use the liquor is required, the quantity and kind requested, and his or her true name and residence, and, where numbered, by street and number, if in a city, and the request shall be signed by the applicant in his own true name and signature, attested by the county dispenser or his clerk who receives and files the request, in his own true name and signature, and in his own handwriting. But the request shall be refused if the county dispenser filling it personally knows the person applying is a minor, that he is intoxicated, or that he is in the habit of using intoxicating liquors to an excess; or, if the applicant is not so personally known to said

county dispenser before filling said order or delivering said liquor, he shall require identification, and the statement of a reliable and trustworthy person of good character and habits, known personally to him, that the applicant is not a minor, and is not in the habit of using intoxicating liquors to an excess.

Sec. 12. Requests for the purchase of liquor shall be made upon blanks furnished by the county auditor, in packages of one hundred each, to the county dispensers, from time to time, as the same shall be needed, and shall be numbered consecutively by the auditor. The blanks aforesaid shall be furnished to the county auditor by the state board of control in uniform books like bank checks, and the date of delivery shall be indorsed by the county auditor on each book, and receipt taken therefor and preserved in his office. The county dispenser shall preserve the application in the original form and book, except the filling of the blanks therein, until returned to the county auditor. When return thereof is made, the county auditor shall indorse thereon the date of return, and file and preserve the same, to be used in the quarterly settlements between the county dispenser and the county treasurer. All unused or mutilated blanks shall be returned or accounted for before other blanks are issued to such county dispensers.

Sec. 13. On or before the tenth day of each month, each county dispenser shall make full returns to the county auditor of all requests filled by him and his clerks during the preceding month upon blanks to be furnished by the state board of control for the purpose, and accompany the same with an oath, duly taken and subscribed before the county auditor or a notary public, which shall be in the following form, to wit: I, ———, being duly sworn, state on oath that the requests for liquors herewith returned are all that were received and filled at my place of business under my permit during the month ———, 18—; that I have carefully preserved the same, and that they were filled up, signed, and attested at the date shown thereon, as provided by law; that said requests were filled by delivering the quantity and kind of liquors required; and that no liquors have been sold or dispensed under my permit during said month except as shown by the requests herewith returned; and that I have faithfully observed and complied with the provisions of my bond and oath taken by me, thereon indorsed, and with all the laws relating to my duties in the premises.

Sec. 14. Upon failure of any county dispenser to make the returns to the auditor as herein required, it shall be the duty of said auditor to report such failure to the county board of control, and the said county board of control shall immediately summon said delinquent county dispenser to appear before them and show cause why his permit should not be revoked; and, if the cause shall not be shown to the satisfaction of the county board of control, they shall immediately annul said permit and give public notice thereof; and the solicitor shall proceed to enforce the penalties prescribed in this act for such violation against said county dispenser at the next succeeding term of court of the county in which such permit is held, and any county dispenser who shall sell or dispense any intoxicating liquors after his permit shall have been revoked shall, upon conviction thereof, be fined not less than $500, and be imprisoned in the county jail for six months.

Sec. 15. Every county dispenser shall keep a strict account of all liquors received by him from the state commissioner, in a book kept for that purpose, which shall be subject at all times to the inspection of the circuit solicitor, any peace officer, or grand juror of the county, or of any citizen, and such book shall show the amount and kind of liquors procured, the date of receipt and amount sold, the amount on hand of each kind for each month. Such book shall be produced by the party keeping the same, to be used as evidence on trial of any prosecution against him, on notice duly served that the same will be required as evidence.

Sec. 16. The payment of the United States special tax as a liquor seller, or notice of any kind in any place of resort or in any store or shop, indicating that intoxicating liquors are there sold, kept, or given away, shall be held to be prima facie evidence that the person or persons paying said tax, and the parties displaying such notices, are sellers of intoxicating liquors;

and unless said person or parties are selling under permit, as prescribed by this act, they shall be punished as provided for by this act.

Sec. 17. Licensed druggists conducting drug stores, and not holding permits, and manufacturers of proprietary medicines, are hereby authorized to purchase of county dispensers of the counties of their residence intoxicating liquors (not including malt) for the purpose of compounding medicines, tinctures, and extracts that cannot be used as a beverage. Such permit holders shall not charge such licensed druggists over 10 per cent. net profits for liquors so sold. Such purchaser shall keep a record of the uses to which the same are devoted, giving the kind and quantity so used; and on or before the tenth of each calendar month they shall make and file with the county auditor, and with the county board of control, sworn reports of the preceding calendar month, giving a full and true statement of the quantity and kinds of such liquors purchased and used, the uses to which the same have been devoted, and giving the names of county dispenser from whom the same was purchased, and the dates and quantities so purchased, together with an invoice of each kind still in stock and kept for such compoundings. If said licensed druggist sell, barter, give away, or exchange, or in any manner dispose of, said liquors, or use the same for any purpose other than authorized in this section, he shall, upon conviction before any court of general sessions, forfeit his license, and be liable to all penalties, prosecutions, and proceedings at law and in equity, provided against persons selling without permit, and, upon such conviction, the clerk of court shall, within ten days after such judgment or order, transmit to the board of pharmaceutical examiners the certified record thereof, upon receipt of which the said board shall strike the name of the said druggist from the list of pharmacists, and cancel his certificate: provided, that nothing herein contained shall be construed to authorize the manufacture or sale of any preparation or compound, under any name, form, or device, which may be used as a beverage which is intoxicating in its character.

Sec. 18. That the sum of fifty thousand dollars, if so much be necessary, is hereby appropriated for the purpose of purchasing and of supplying liquors to be distributed to county dispensers under the provisions of this act, to be expended by the state treasurer, upon the requisition of the state commissioner, with the approval of the state board of control: provided, that the amounts advanced to each county dispenser shall be considered loans, to be refunded out of the profits derived from the sales of liquors by the county dispenser therein.

Sec. 19. If any person shall make any false or fictitious signature, or sign any name other than his or her own, to any paper required to be signed by this act, without being authorized so to do, or make any false statement in any paper, request, or application signed to procure liquors under this act, the person so offending shall be guilty of a misdemeanor, and, upon conviction therefor, shall be punished by a fine of not less than one hundred dollars, nor more than five hundred dollars, and costs of prosecution, or be imprisoned not less than thirty days, nor more than six months.

Sec. 20. If any county dispenser or his clerk shall make false oath touching any matter required to be sworn to under the provisions of this act, the person so offending shall, upon conviction therefor, be punished as provided by law for perjury. If any county dispenser, under the law, shall purchase or procure any intoxicating liquors from other person than the state commissioner, or make any false return to the county auditor, or use any request for liquors for more than one sale, in any such case he shall be deemed guilty of a misdemeanor, and, upon conviction, punished by a fine of not less than $100, nor more than $500, and imprisonment in the county jail for not less than ninety days, nor more than one year, for each offense.

Sec. 21. Every person who shall, directly or indirectly, keep or maintain, by himself or by associating or combining with others, or who shall in any manner aid, assist, or abet in keeping or maintaining, any club room or other place in which any intoxicating liquors are received or kept for the purpose of barter or sale as a beverage, or for distribution or division among the members of any club or association by any means whatever, and every per-

son who shall barter, sell, or assist or abet another in bartering or selling, any intoxicating liquors so received or kept, shall be deemed guilty of a misdemeanor, and, upon conviction thereof, be punished by a fine of not less than one hundred dollars, nor more than five hundred dollars, and by imprisonment in the county jail not less than ninety days, nor more than one year.

Sec. 22. All places where intoxicating liquors are sold, bartered, or given away in violation of this act, or where persons are permitted to resort for the purpose of drinking intoxicating liquors as a beverage, or where intoxicating liquors are kept for sale, barter, or delivery in violation of this act, are hereby declared to be common nuisances; and if the existence of such nuisance be established, either in a criminal or equitable action, upon the judgment of a court, or judge having jurisdiction, finding such place to be a nuisance, the sheriff, his deputy, or any constable of the proper county or city where the same is located, shall be directed to shut up and abate such place by taking possession thereof, if he has not already done so, under the provision of this act, and by taking possession of all such intoxicating liquors found therein, together with all signs, screens, bars, bottles, glasses, and other property used in keeping and maintaining such nuisance; and such personal property so taken possession of shall, after judgment against said defendant, be forthwith confiscated to the state, and, the owner or keeper thereof shall, upon conviction, be adjudged guilty of maintaining a common nuisance, and shall, for the first offense, be punished by a fine of not less than $100, nor more than $1,000, or by imprisonment in the county jail of not less than ninety days, nor more than one year, and for each successive offense be punished by imprisonment in the penitentiary for a period not exceeding two years nor less than one year.

Sec. 23. The attorney general, or his assistant, the circuit solicitor, or any citizen of the county where such nuisance exists, or is kept or maintained, may maintain an action in the name of the state to abate and perpetually enjoin the same. The injunction shall be granted at the commencement of the action in the usual manner of granting injunctions, except that the affidavit or complaint, or both, may be made by the attorney general, his assistant, or the solicitor of the circuit, upon information or belief, and no bond shall be required; and if an affidavit shall be presented to the court or judge, stating or showing that intoxicating liquors, particularly describing the same, are kept for sale, or are sold, bartered, or given away, on the premises, particularly describing the same, where such nuisance is located contrary to law, the court or judge shall, at the time of granting the injunction, issue his orders commanding the officer serving the writ of injunction, at the time of such service, diligently to search the premises, and carefully to invoice all articles found therein, used in or about the carrying on of the unlawful business, for which search and invoicing said officer shall receive the fees now allowed by law for serving an injunction. If such officer, upon such search, shall find upon such premises any intoxicating liquor, or liquors of any kind, in quantity going to show it was for purpose of sale or barter, he shall take the same into his custody, and turn over the same to the sheriff of the county, who shall securely hold the same to abide the final judgment of the court in the action, (the expenses for holding to be taxed as part of the costs of the action;) and such officer shall also take possession of all personal property found on such premises, and turn over the same to the sheriff of the county, who shall hold the same until the final judgment in the case. The finding of such intoxicating liquors on such premises, with satisfactory evidence that the same were being disposed of contrary to this act, shall be prima facie evidence of the nuisance complained of. Liquors seized as hereinbefore provided, and the vessels containing them, shall not be taken from the custody of the officer in possession of the same by any writ of replevin or other process while the proceedings herein provided are pending; and final judgment in such proceedings in favor of the plaintiff shall in all cases be a bar to all suits against such officer or officers for the recovery of any liquors seized, or the value of the same, or for damages alleged to arise by reason of the seizure and detention thereof. Any person violating the terms of any injunction granted in

such proceedings shall be punished for contempt, for the first offense, by a fine of not less than two hundred dollars, nor more than one thousand dollars, and by imprisonment in the county jail not less than ninety days, nor more than one year. In case judgment is rendered in favor of plaintiff in any action brought under the provisions of this section, the court or judge rendering the same shall also render judgment for a reasonable attorney's fee in such action in favor of the plaintiff, and against the defendants therein, which attorney's fee shall be taxed and collected as the other costs therein, and, when collected, paid to the attorney or attorneys of the plaintiff therein: provided, if such attorney be the state's attorney or solicitor, such attorney's fee shall be paid into the county treasury. In contempt proceedings arising out of the violations of any injunction granted under the provisions of this act, the court, or, in vacation, the judge thereof, shall have the power to try summarily, and punish, the party or parties guilty, as required by law. The affidavits upon which the attachment for contempt issues shall make a prima facie case for the state. The accused may plead in the same manner as to an indictment, in so far as the same is applicable. Evidence may be oral, or in the form of affidavits, or both. The defendant may be required to make answers to interrogatives, either written or oral, as, in the discretion of the court or judge, may seem proper. The defendant shall not necessarily be discharged upon his denial of the facts stated in the moving papers. The clerk of the court shall, upon the application of either party, issue subpoenas for witnesses, and, except as above set forth, the practice in such contempt proceeding shall conform as nearly as may to the practice in the court of common pleas.

Sec. 24. It shall be the duty of sheriffs, deputy sheriffs, and constables having notice of the violation of any of the provisions of this act to notify the circuit solicitor of the fact of such violation, and to furnish him the names of any witnesses within their knowledge, by whom such violation can be proven. If any such officer shall willfully fail to comply with the provisions of this section, he shall, upon conviction, be fined in a sum not less than one hundred dollars, nor more than five hundred dollars, and such conviction shall be a forfeiture of the office held by such person; and the court before whom such conviction is had shall, in addition to the imposition of the fine aforesaid, order and adjudge the forfeiture of his said office.

Sec. 25. No person shall knowingly bring into this state, or knowingly transport from place to place within this state, by wagon, cart, or other vehicle, or by any other means or mode of carriage, any intoxicating liquors, with the intent to sell the same in this state in violation of law, or with intent that the same shall be sold by any other person, or to aid any other person in such sale, under a penalty of $500 and costs for each offense, and in addition thereto shall be imprisoned in the county jail for one year. In default of payment of said fine and costs, the party shall suffer an additional imprisonment of one year. Any servant, agent, or employe of any railroad corporation, or of any express company, or of any persons, corporations, or associations doing business in this state as common carriers, who shall remove any intoxicating liquors from any railroad car, vessel, or other vehicle of transportation, at any place other than the usual and established stations, wharves, depots, or places of business of such common carriers within some incorporated city or town, where there is a dispensary, or who shall aid in or consent to such removal, shall be subject to a penalty of $50 and imprisonment for thirty days for every such offense: provided, that said penalty shall not apply to any liquor in transit, when changed from car to car to facilitate transportation. All such liquor intended for unlawful sale in this state may be seized in transit, and proceeded against as if it were unlawfully kept and deposited in any place. And any steamboat, sailing vessel, railroad, express company, or other corporation, knowingly transporting or bringing such liquor into the state, shall be punished upon conviction by a fine of five hundred dollars and costs for each offense. Knowledge on the part of any authorized agent of such company shall be deemed knowledge of the company.

Sec. 26. The governor shall have authority to appoint one or more state constables, at a salary of $2 per day and expenses when on duty, to see that

this act is enforced, the same to be charged to the expense account of the state commissioner.

Sec. 27. No law now in effect, prohibiting the sale of intoxicating liquors in any of the counties or towns of this state, is repealed by this act.

Sec. 28. All acts or parts of acts inconsistent with this act are hereby repealed.

Approved December 24, 1892.