**CARUTH, Mayor, v. STATE ex rel. TOBIN et al.**

No. 14615—Opinion Filed Nov. 20, 1923.

Rehearing Denied Feb. 19, 1924.

(Syllabus.)

**1. Municipal Corporations — Adoption of Charter — Effect — Constitution.**

Section 3 (a) of art. 18 of the Constitution, authorizes any city containing a population of more than 2,000 inhabitants to frame a charter for its own government consistent with and subject to the Constitution and laws of this state, and provides that upon its approval by the Governor, the charter shall become the organic law of such city and supersede any existing charter and all amendments thereof and all ordinances inconsistent with it.

**2. Same — Initiative and Referendum.**

By section 4 (a), art. 18, of the Constitution, the powers of the initiative and referendum are reserved to the people of every municipal corporation within this state, with reference to all legislative authority which it may exercise, and amendments to the charter for its own government in accordance with the provisions of said Constitution.

**3. Same—Change in Charter—Statutes.**

Chapter 161, Sess. Laws 1919 (section 4504, Comp. Stat. 1921), is amendatory of section 536, Rev. Laws 1910, and provides for the amendment, revocation, or appeal of city charters adopted and approved pursuant to the foregoing constitutional authority, and prescribes the procedure by which such proposed amendment, revocation, or repeal may be initiated.

**4. Statutes — Presumption of Validity.**

Laws are presumed to be, and must be, treated and acted upon by subordinate executive functionaries as constitutional and legal until their unconstitutionality or illegality has been judicially determined.

**5. Municipal Corporations — Change in Charters — Statutes.**

Chapter 161, Sess. Laws 1919 (section 4504, Comp. Stat. 1921), applies only to cities whose charters make no provision for the amendments, revocation, or repeal of such charters. Where in a city charter itself the method for its amendment, revocation, or repeal is provided, such method is exclusive.

**6. Same — Effect of Charter as Organic Law.**

A city charter, when adopted by the people and approved by the Governor, pursuant to constitutional authority, becomes the organic law of the city, and the provisions thereof supersede all laws of the state in conflict therewith, in so far as such laws relate to purely municipal matters.

**7. Same— Charter Provisions — Scope of Initiative Provision.**

Article 17 of the charter of the city of Shawnee, pertaining to the initiative, applies only to such municipal legislation as the council might enact, and does not include within its scope the submission of the question of whether or not such charter should be repealed.

**8. Same — Repeal of Charter — Statutory Procedure.**

Where neither the Constitution nor the charter of a city provides for the revocation or repeal of such charter and adoption of the laws of the state pertaining to municipal corporations as the governing laws of the city, and such provision is made by act of the Legislature, the repeal of such charter and the adoption of the laws of the state as the organic law of the city, may be affected in the manner provided by statute.

**9. Statutes — Initiative — Two or More Propositions in One Petition.**

Two or more congruous propositions may be united as one in an initiative petition, and in a submission thereof to an electorate so as to have an expression of the voters determine whether such composite proposition, with each of its elemental propositions, shall be adopted.

**10. Same — Procedure in Submission — Petitioners Favored.**

Proceedings under the initiative and referendum provisions of the Constitution and statute should be construed liberally in favor of the petitioners.

Error from District Court, Pottawatomie County; Hal Johnson, Judge.

Action in mandamus by the State ex rel. Thomas P. Tobin, John Kerker, and J. A. Farriss, against George B. Caruth, as Mayor of the city of Shawnee. From the order of the trial court issuing a peremptory

writ of mandamus, the respondent appealed. Affirmed.

Wyatt & Waldrep, Good & Dierker, and Arrington & Evans, for plaintiff in error.

F. H. Reily, A. M. Baldwin, A. J. Carlton, and I. C. Saunders, for defendants in error.

NICHOLSON, J. This is an appeal from the action of the trial court in issuing a peremptory writ of mandamus, directing the plaintiff in error, respondent below, to issue his proclamation, as mayor of the city of Shawnee, calling a special election in said city for the purpose of submitting to the qualified electors thereof the question of whether or not the charter of said city, and all amendments thereto, should be repealed and the form of city government provided for by the laws of the state of Oklahoma adopted, and in case said question carried, then to issue a subsequent proclamation calling a primary election to be held in said city for the purpose of nominating candidates for the various offices, and thereafter to issue his proclamation calling a general election for the purpose of electing officers of said city.

It appears that on the 20th day of June, 1923, the defendants in error, relators, filed with the respondent a certain petition purporting to be signed by more than 25 per cent. of the qualified electors of said city, petitioning said respondent to submit to the qualified electors of said city for their approval or rejection, at an election to be called by him, the question of whether or not the charter of said city and all amendments thereto should be repealed and the laws of the state of Oklahoma for cities of the first class having a population of less than 20,000 be adopted for the government of the city, and calling a primary and general election for the nomination and election of the city officers provided for by said laws.

On receipt of this petition, and on said 20th day of June, 1923, the respondent delivered the same to the city clerk of the city, with directions to proceed forthwith to examine said petition, and the names appearing thereon, and to make a finding as to whether or not said petition was sufficient in form and substance, and to report the number of legal voters of said city found to have signed said petitions; that said city clerk made such examinations and investigation and thereafter, on the 28th day of June, 1923, made his finding and report in which he found and certified that said petition contained approximately 1,700 names, but that only 336 thereof were the names of duly qualified electors, and that said petition was wholly insufficient to demand the calling of an election: that the total number of votes cast at the last preceding general municipal election held in said city was 2,547, and that said petition did not contain 25 per centum of the votes at the last general municipal election.

This action was filed on June 27, 1923, the day before the city clerk made and filed his findings and report on said petition, and an alternative writ of mandamus issued thereon. In his return to said writ, the respondent, among other things, pleaded the insufficiency of said petition so filed. Upon a trial, the court granted a peremptory writ of mandamus directing the respondent to call an election as demanded by said petition, and it is this action of the court of which the respondent complains.

The chief contention of respondent is that the proper procedure was not followed by the realtors, in that they failed to observe the provisions of the city charter relating to elections on initiative petitions. In support of this contention, it is argued that the provisions of the city charter relating to elections on initiative petitions are supreme as to all municipal matters, except in those respects wherein the same are in conflict with the Constitution; that as to elections called on initiative petitions, the statute of the state, the charter of the city, and the Constitution are to be construed together and all given effect, except, that in case of a conflict the provisions of the statute must give way to the charter and Constitution, and that, by construing these provisions together, the proper procedure is pointed out.

Let us look to the Constitution, statute, and charter provisions to determine whether this contention of respondent is correct, and whether these provisions, construed together, point out the procedure for the repeal of the charter.

Section 3 (a), art. 18, of the Constitution authorizes any city containing a population of more than 2,000 inhabitants to frame a charter for its own government consistent with and subject to the Constitution and laws of this state, and provides that, upon approval of such charter by the Governor, it shall become the organic law of the city and supersede any existing charter and all amendments thereof and all ordinances inconsistent with it; and by the provision of section 4 (a) of art. 18 of the Constitution, the powers of the initiative an referendum are reserved to the people of every municipal corporation within the state with-

reference to all legislative authority which it may exercise, and amendments to charters for its own government in accordance with the provisions of the Constitution.

On May 22, 1908, the act of the Legislature entitled: "An act to enable all cities containing a population of more than 2,000 inhabitants to frame and adopt charters for their own government, and to extend and define their powers," became effective. Sections 533-540, Rev. Laws 1910. The provisions of this act are in many respects practically identical with the aforesaid constitutional provisions, both of which provide for the amendment of city charters, but neither of which provides for the repeal of such charters.

Under the aforesaid constitutional provision, the city of Shawnee adopted a charter for its own government, but no provision was made therein for its repeal. Thus, it will be seen that neither the Constitution of the state, the charter of the city, nor the act of the Legislature of May 22. 1908, supra, provided the procedure for the repeal of a city charter, or in terms authorized such repeal. This situation existed until 1919, when the Legislature by chapter 161, Sess. Laws 1919 (section 4504, Comp. Stat. 1921), provided for the amendment, revocation, or repeal of city charters by proposals therefor submitted by the legislative authority of the city to the qualified electors thereof, to be voted for at any general or special election, or said proposals may be submitted by a petition signed by a number of qualified electors residing within the corporate limits of such city equal to 25 per centum of the total number of votes cast at the last general election or special election held in such municipality, and the proceedings shall be construed liberally in favor of the petitioners; that part of the act necessary to here notice reads as follows:

"Upon the filing of a petition, signed by the required number of electors, qualified to vote in the proposed election, as the same appears on the face of the petition, with a copy of proposed amendment, substitution, revocation, or repeal of the charter, said executive authority must issue a proclamation calling a special election to ratify or reject such amendment, substitution, revocation, or repeal, and such special election shall be held not later than 25 days after said petition has been filed; provided, that said amendment, substitution, revocation, or repeal may be submitted to any general election if any to be held in such municipality within 30 days of the filing of said petition, such proposed amendments, substitution, revocation, or repeal shall be ratified in such election by a majority of the qualified electors voting thereon.

"If the majority of the qualified electors voting upon any amendment to such charter, or any demand for its abolishment or repeal or for its substitution for what is generally known as the managerial form of the city government, shall vote in favor thereof, then the same shall be submitted to the Governor for his approval and the Governor must approve the same if the same shall not be in conflict with the Constitution or laws of the state. Upon such approval by the Governor it shall become the organic law of such city and supersede any existing charter and all amendments thereto and all ordinances in conflict therewith."

This section also provides for the substitution of the managerial form of city government for the charter form.

It was under this statutory provision that the relators proceeded. The respondent urges that this section of the statute is unconstitutional in that it is violative of section 4 (e) of art. 18 of the Constitution. The relators answer this contention by insisting that the respondent cannot be heard to question the validity of the statute in this action. This presents the question of whether or not the chief executive officer of a municipality will be permitted, in a mandamus proceeding, to plead, in justification of nonperformance of a duty imposed upon him by statute, that such statute violates the Constitution.

This question, it seems to us, has been decided adversely to respondent in Threadgill et al. v. Cross, Sec'y of State, 26 Okla. 403, 109 Pac. 558, and in State ex rel. Cruce, Governor, v. Cease et al., 28 Okla. 271, 114 Pac. 251. In both of these cases many authorities are cited and referred to, and the rule that laws are presumed to be valid and must be so treated and acted upon by subordinate executive functionaries as constitutional and legal until their unconstitutionality or illegality has been judicially determined, was adhered to.

By the provisions of the statute above referred to, it is made the duty of the respondent, as the chief executive authority of the city, to issue a proclamation calling a special election to ratify or reject a proposed amendment, substitution, revocation, or repeal of the charter when there has been filed a petition therefor, signed by the required number of electors, as the same appears on the face of the petition, together with a copy of the proposed amendment, substitution, revocation, or repeal. By these provisions, the

duties of the respondent are clearly defined, and, while we express no opinion as to the validity. or invalidity of such provisions, we are convinced that the respondent has no authority to decline the performance of such duties on the ground that the statute contravenes the Constitution. The nature of his office is not such as to require or permit him to raise the question, and he has no personal interest which will entitle him to do so.

It is next contended that such statute has no application to the city of Shawnee, but relates only to cities having a charter form of government with a provision that at certain intervals the question of repealing the same should be submitted to the electors of said city, Section 1 of the act indicates as much, but section 2 is amendatory of section 536, Rev. Laws 1910, which provides for the amendment of city charters, but makes no provision for their revocation or repeal.

It is a fundamental rule of construction that the intent of the lawmakers should be ascertained, in order that the true meaning of the Legislature may be determined. It seems clear to us that by this act the Legislature intended to provide not only that in cities which have adopted a charter containing a provision to the effect that after the expiration of a specified time, the question of whether such charter should be abandoned should be submitted to the qualified electors, but it also intended to provide a method whereby the people of any city might determine for themselves whether or not the charter adopted by them should be revoked. Of course, the act could only apply to those cities the charters of which made no provision for their revocation or repeal, for if the city charter itself, provides the method of its amendment, revision, or repeal, such charter provision is exclusive. In re Initiative Petition on Proposed Charter for City of Okmulgee, 89 Okla. 134, 214 Pac. 168.

It is well settled that a charter. when adopted by the people and approved by the Governor pursuant to section 3 (a), art. 18, of the Constitution. becomes the organic law of the municipality and the provisions of the charter supersede all laws of the state in conflict therewith in so far as such laws relate to purely municipal matters. State ex rel. Burns v. Linn, 49 Okla. 526, 153 Pac. 826; Owen v. City of Tulsa, 27 Okla. 264, 111 Pac. 320; Bodine v. Oklahoma City 79 Okla. 106, 187 Pac. 209; Watts, Mayor, v State ex rel. Scott, 77 Okla. 199, 187 Pac. 797; Walton, Mayor. v. Donnelly, Com'r of Finance, 83 Okla. 233, 201 Pac. 367; In re

Initiative Petition on Proposed Charter of City of Okmulgee, supra; Hinz, Com'r v. Hubbard, 95 Okla. 16, 216 Pac. 440. The charter of the City of Shawnee could have, and property should have, provided for its amendment, revocation, or repeal, but no such provision is made. We are unable to understand how it can be said that the act under consideration is in conflict with a charter provision which does not exist, and it is only those statutory provisions which are in conflict with the provisions of the charter which are superseded by it.

It is not contended that article 17 of the charter, pertaining to elections, governs the matter involved. Section 6 of this charter provides, in substance, that any proposed ordinance, or any other legal act, may be submitted to the council by a petition signed by registered electors of the city equal in number to 25 per centum of the total number of votes cast at the next preceding election, such petition to be filed with the chief executive officer of the city who shall cause the city clerk, within ten days from the date of filing such petition, to examine it and from the register ascertain whether or not such petition is signed by the requisite number of qualified electors If the petition is found to be sufficient, the mayor shall submit the same to the council at its next meeting. If found to be insufficient, it may be amended, and if, after amendment, the certificate of the clerk shows it to be insufficient, it shall be returned to the person filing it, without prejudice to the filing of a new petition to the same effect. If the petition be sufficient, the council shall grant the same, but unless it is granted by the council more than 30 days prior to the next election at which city officers are elected, the mayor shall submit the ordinances or act petitioned for to the qualified electors of the city at said election.

This language indicates that it was only such municipal legislation as the council might enact that was intended to come within the terms of the charter and that the matter of the repeal of the charter was not within the contemplation of the framers thereof, or the people, when the charter was drafted and adopted, for clearly the city council could not repeal the charter, and by the terms thereof it was only such acts as might be passed by the council, but which it failed or refused to do, that were required to be referred to the people. It is clear to us that this charter provision is insufficient to include within its scope the submission of the question of whether or not the charter should be repealed.

Respondent next argues that when a freeholder's charter has once been adopted and

it has become the organic law of the city, the same may not thereafter be entirely abrogated or repealed. This, if true, would deprive the people of municipalities of the right of local self-government. If the people of a municipal corporation had the right to frame a charter for their own government, but have no right to repeal such charter and adopt the statute of the state governing municipal corporations as their charter or organic law, then they have so securely manacled and shackled themselves that their release cannot be effected except, possibly, with a key furnished by the people of the whole state in the form of a constitutional amendment authorizing such repeal. We are not willing to say that this situation exists. We consider it axiomatic that the power to create carries with it the power to destroy, particularly where this power has been conferred by the Legislature.

The decisions of the Supreme Courts of California and Oregon cited do not sustain the contention made. In McKeon v. City of Portland et al. (Ore.) 122 Pac. 291, cited and relied upon, it was held that a municipal corporation could not commit suicide by wholly repealing its charter and going out of existence as a municipality, but that is not this case. The city of Shawnee is not seeking to commit suicide, and has no intention of going out of existence as a municipality. It is merely sought to submit to the electors thereof the question of whether or not the statute of the state shall be substituted for the charter as the organic law of the city.

Respondent further says that the petition submitted contains two propositions: First, the proposition to repeal and abrogate the city charter; and, second, to recall all officers of the city and to elect new ones, and that the writ of mandamus directs the carrying out of these propositions, and insists that these questions cannot be initiated in the same petition, and neither is there any authority of law authorizing the writ of mandamus commanding the execution of any of said acts. No authority is cited in support of this position.

In People ex rel. Fowler v. Brown, 83 Ill. 95, it was held that the repeal of a city charter abolishes all offices under it. If this be true, and if the people of Shawnee should repeal the charter of the city and substitute therefor the statute of the state pertaining to municipal corporations, it follows of necessity that the officers provided for by statute should be elected in order that they might take over the reins of government. Otherwise, a city of the first

class would exist without the requisite officials to administer the affairs of the city.

In Turner et al. v. Ramsey et al., 63 Okla. 199, 163 Pac. 712, it was held that two or more congruous propositions might be united as one in an initiative petition, and in a submission thereof to an electorate so as to have an expression of the voters determine whether such composite proposition, with each of its elemental propositions, should be adopted as an amendment to a city charter. It seems to us that the propositions presented by the petition here involved are congruous, and should be treated as a single proposition. The petition presents a combination of propositions looking to but one end, that of substituting the statute for the charter, and providing the official machinery necessary to carry on the affairs of the city. If the first proposition should carry, the second would follow as a matter of course, and we can see no reason for requiring the propositions to be submitted separately.

We express no opinion as to the constitutionality of chapter 161. Sess. Laws 1919 (section 4504, Comp. Stat. 1921), but, treating it as valid, as it must be treated in this case, we are unable to say that it is violative of any rights of the electorate, or that it is revolutionary in its character. Its purpose and effect is merely to provide a means, where none already exists, for the repeal of the charter and the adoption, in lieu thereof, of the managerial form of city government, or the adoption of the applicable laws of the state as the organic law of the city. The only material departure from the procedure provided by the charter of the city of Shawnee on initiative petitions is, that the petition presented is not required to be filed with or passed upon by the city clerk, but when such petition shows upon its face that it bears the signatures of the required number of electors, the mayor is required to call an election to submit the proposal presented and the election is called and conducted in the manner provided for by the charter.

Had the city of Shawnee not adopted a charter form of government it would have been governed by the Constitution and laws of the state; and having failed to include in its charter an essential provision, we can perceive of no reason why the laws of the state should not govern in those matters wherein such charter is deficient, provided, of course, that the statute does not contravene the Constitution.

The petition submitted to respondent shows on its face it was signed by more

than 25 per centum of the qualified electors of the city, a copy of the proposed repeal of the charter and substitution of the statute in lieu thereof was presented with said petition, and it was the duty of the respondent to issue the proclamation calling the election therein demanded.

It was the intention of the framers of the Constitution to permit the inhabitants of municipalities to provide rules for their own government, and the very purpose of the initiative and referendum is to clothe the electors with the right to legislate for themselves, and the question of the manner in which or the procedure by which a proposition is submitted for their consideration is not nearly so important as their rights to freely express their opinions at the polls. We do not want to be understood as saying that it is unnecessary to substantially comply with the provisions of law governing the initiative and referendum, but we do say that the law should be liberally construed in favor of permitting the electors to voice their sentiments, and they should not be throttled with technicalities. They will indicate their desires at the polls. If they determine to repeal the charter as their governing law, the respondent will be unaffected. If they determine to repeal the charter and adopt in its stead the laws of the state as their organic law, the respondent will be compelled to bow to their will.

It follows that the judgment of the trial court granting the peremptory writ of mandamus is correct, and such judgment is affirmed.

McNEILL, V. C. J., and KENNAMER, COCHRAN, BRANSON, HARRISON, and MASON, JJ., concur.