**MOORE, Com'r, et al. v. OKLAHOMA CITY et al.**

No. 18128—Opinion Filed March 1, 1927.

(Syllabus.)

1. **Municipal Corporations—Charters—Constitutional Rights—Change from Commission Form to Managerial Form of Government by Amendment of Charter.**

Section 3 (a), art. 18, of the Constitution consists of two groups of provisions, whereby cities containing a population of more than two thousand may obtain two distinct primary rights, viz.: First, for obtaining a charter, authorizing and granting independent self-government in municipal affairs. Second, for amending such charter after having once adopted same. The first object must be obtained through a board of freeholders in the manner prescribed. The second may be obtained either through an initiated petition or through the legislative authority of such city without such petition. Said section contains no provision for repealing or annulling such charter after having been once duly adopted, nor provision whereby the state may revoke the rights therein granted; a charter once duly adopted becomes the organic law of a city, but subject to amendment as provided in said article 18.

A change in the plan of governing and administering the municipal affairs of a chartered city, from a commission form to a managerial form of government, is not the repeal of its charter nor the adoption of a new charter, nor the surrendering of its charter rights, but is an amendment and within the scope of valid amendments, so long as its charter rights and powers of independent self government are retained and brought forward in the proposed change.

2. **Same—Necessary Co-operation of Police with State Peace Officers.**

Under any form of city government the police forces thereof must necessarily co-operate with the peace officers of the state in keeping the peace of the state.

3. **Same—Validity of Election Amending Charter—Provision for Issuing and Retiring Bonds Submitted with Other Provisions Under One Ballot Title.**

The fact that a provision for issuing and retiring the municipal bonds of a city is embodied with other provisions in a proposed change in form of city government, and is submitted under one ballot title with the other provisions, does not on the grounds of being unrelated and incongruous render the election void.

4. **Same—Validity of Election not Affected by Mere Irregularities.**

An election will not be held void and set aside on grounds of mere technical irregularities, where it appears that the proposition voted upon had been fully discussed and was fully understood by the voters, and no charge of fraud is made nor any complaint made as to opportunity for full and free expression of the voters.

Error from District Court, Oklahoma County; T. G. Chambers, Judge.

Action by Warren E. Moore, as Commissioner of Public Works of Oklahoma City, and individually, and the State, on the relation of J. K. Wright, County Attorney of Oklahoma County, against Oklahoma City et al. Judgment for defendants. and plaintiffs bring error. Affirmed.

D. S. Levy and J. K. Wright, for plaintiffs in error.

Frank Martin, R. R. Bell, Frank Wells, and D. B. Welty, for defendants in error.

HARRISON, J. The purpose of this suit is to test the validity of the purported amendment to the charter of Oklahoma City, adopted at the last general election, the object of which was to change from what is designated as the commission form to a managerial form of government.

The principal contention of plaintiffs in error, who were plaintiffs below, is that the purported amendment is not in fact a mere amendment, but in fact and in legal effect

is an out and out new charter, and being a new charter, was not adopted as required by the Constitution of the state, and is therefore invalid.

The questions involved were submitted to the district court upon an agreed statement of facts, and the court held the act to be an amendment merely, and to be in all respects valid, and plaintiffs in error appeal to this court for a reversal of the judgment.

The contentions of plaintiffs in error are based primarily upon the provisions of article 18, sec. 3 (a), of the Constitution, which are as follows:

"Any city containing a population of more than two thousand inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of this state, by causing a board of freeholders, composed of two from each ward, who shall be qualified electors of said city * * * at any general or special election, whose duty it shall be, within ninety days after such election, to prepare and propose a charter for such city, which shall be signed in duplicate by the members of such board or a majority of them, and returned, one copy of said charter to the chief executive officer of such city, and the other to the register of deeds of the county in which said city shall be situated. Such proposed charter shall then be published in one or more newspapers published and of general circulation within said city, for at least twenty-one days, if in a daily paper, or in three consecutive issues, if in a weekly paper, and the first publication shall be made within twenty days after the completion of the charter; and within thirty days, and not earlier than twenty days after such publication, it shall be submitted to the qualified electors of said city at a general or special election, and if a majority of such qualified electors voting thereon shall ratify the same, it shall thereafter be submitted to the Governor for his approval, and the Governor shall approve the same if it shall not be in conflict with the Constitution and laws of this state. Upon such approval it shall become the organic law of such city and supersede any existing charter and all amendments thereof and all ordinances inconsistent with it. A copy of such charter, certified by the chief executive officer, and authenticated by the seal of such city, setting forth the submission of such charter to the electors and its ratification by them, shall, after the approval of such charter by the Governor, be made in duplicate and deposited, one in the office of the Secretary of State, and the other, after being recorded in the office of said register of deeds, shall be deposited in the archives of the city; and thereafter all courts shall take judicial notice of said charter. The charter so ratified may be amended by proposals therefor, submitted by the legislative authority of the city to the qualified electors thereof (or by a petition as hereinafter provided) at a general or special election, and ratified by a majority of the qualified electors voting thereon, and approved by the Governor as herein provided for the approval of the charter."

The contention is that the purported amendment in question, being in fact and in legal effect a new Constitution, should have been prepared and submitted by a board of freeholders as provided in the first portion of the foregoing section for the adoption of a charter in the first instance by a city containing more than two thousand inhabitants; and that having been submitted as provided in the latter portion of said section for the submission of mere amendments to city charters, renders it invalid as a new charter.

It is not denied that the question was legally submitted, if in legal effect it is an amendment and not a new charter. In other words, it is not denied that the question was properly submitted as an amendment, but urged that, being a new charter, rather than an amendment, it should have been submitted under the provisions for adopting a charter, as provided in the first part of said article 18, sec. 3 (a), and because it was not so submitted, it is invalid.

Plaintiffs in error quote section 4 (e) of article 18, Id., also, but as such section has reference only to amendments initiated under the initiative and referendum provisions of the Constitution, it has no decisive effect upon the real question here involved.

The really decisive questions seem to us to be:

(1) Whether the matter adopted is an amendment or an entirely new charter.

(2) If a new charter, out and out, whether even then the city, after having been once granted a charter, with the full privilege of self-government in its municipal affairs, would thereafter be limited to the constitutional provision for obtaining a charter in the first instance, when desirous of merely changing its method or system of managing its own purely municipal affairs.

The first of the above questions is presented by plaintiffs in their first proposition; they contending that it is not a mere amendment, but a new charter.

As to whether it is an amendment only and not a new charter, must be determined

partly by the definitions which the courts have given the term "amendment," and the distinctions which they have sought to draw between amendments and new acts, and partly by the peculiar constitutional provision governing the particular matter, but largely by the application of common reason to the real substance before us.

The definitions given the word or term "amendment" by different courts are substantially the same in effect, but as to determining the exact legal scope, the exact limits of an amendment or the definite line of distinction between amendments and new acts, and just where an amendment crosses such line and in legal effect becomes a new act, there is no settled rule.

The Supreme Court of California, in Livermore v. Waite, 36 Pac. 424, 25 L. R. A. 312, defines the term as follows:

"* * * The term 'amendment' implies such an addition or change within the lines of the original instrument as will effect an improvement or better carry out the purpose for which it was framed."

In Moore v. Perkins. 137 Pac. 55, the Supreme Court of Colorado defines "amendment" as follows:

"The term 'amendment' being defined as any alteration made or proposed to be made in a bill or motion by addition, change, substitution, or omission."

In Cantini v. Tillman, 54 Fed. 969, it is said:

"Nothing is more common than to amend by striking out one section and by inserting another, or by striking out several sections and by inserting one or several; and if it be competent to amend by striking out and inserting one. two, three, four sections, clearly it is competent to strike out all the sections, and to insert others, in pari materia. Striking out all after the enacting words and inserting is nothing but an amendment. and is governed by the same rules as other amendments."

See, also. Hammond v. Clark (Ga.) 71 S. E. 479 38 L. R. A. (N. S.) 77: Brake v. Callison, 122 Fed. 722; also see "Amendments". Words & Phrases. vol. 1 (First Series) 308, and Words & Phrases, vol. 1 (Second Series) 193; City of Denver v. New York Trust Co., 57 L. Ed. (U. S.) 1101: Speer v. People (Colo.) 122 Pac. 768; State v. Taylor (N. D.) 133 N. W. 1046; People ex rel. Moore v. Perkins (Colo.) 137 Pac. 55.

In some of the above cited cases, charter amendments were involved, in some constitutional amendments were involved, in some the purported changes were held to be

amendments and sustained as such, while in others the purported changes were held to be complete revisions or new acts and held invalid as amendments; but in each case the decision was based upon the peculiar state of facts presented and the peculiar constitutional provision governing such state of facts. And while each of such decisions gives substantially the same general definition of the term "amendment," none of them has drawn a clear line of distinction or boundary line within which a proposed change is an amendment and valid and beyond which it becomes a new act and invalid.

In view of this state of decisions and precedents, in none of which was presented a state of facts identical with that presented here. and as none of which were governed by the identical constitutional provisions which our Constitution contains, we are forced in a great measure to determine the instant case by applying our own peculiar constitutional provisions to the real substance of the matter here presented aided by such light as other decisions may give us.

The scope given to the term "amendment" in Cantini v. Tillman, 54 Fed. 969. which was followed in Brake v. Callison. 122 Fed., supra, and quoted with approval in People v. Perkins, 137 Pac., supra, is perhaps the clearest boundary line of the valid limits of an amendment to be found in the decisions, and as it seems to be basically sound. we see no reason for not giving the proposed change here involved the same scope of validity.

In People v. Perkins, 137 Pac. 55, supra, one question determined in the case was more nearly identical with the question here involved, and the constitutional provisions governing such matter more nearly similar to our own constitutional provisions than any case we have been able to find, and the opinion in said case is one of the most exhaustive opinions we have found upon the general subject. reviewing as it does most all opinions which had been rendered on the subject prior to that opinion, which was rendered in March, 1913. The opinion discloses that in 1904 the city of Denver, Colo., under a constitutional provision similar in effect to the first provision in section 3(a), art. 18. of our Constitution, obtained a charter granting the city of Denver the sovereign right to govern itself in its municipal affairs, which charter provided for a board of supervisors, consisting of seven members, also a board of aldermen, of not less than 16 nor more than 21, and also for the election

of a mayor and certain other judicial officers and provided for a complete system of municipal government, which system had theretofore been recognized as the mayor form of government. In 1913 the city of Denver sought to change its system of government from the mayor form to the commission form of government by amending its charter. The proposed amendment was submitted to and adopted by the electorate under a constitutional provision similar in effect to the provision in section 3(a), art. 18, of our Constitution for amending city charters. Said amendment provided for five commissioners, instead of the mayor and legislative council provided for in the previous charter, and one Marcellus F. Moore, who appears to have been one of the elective officers under the previous charter, brought an action to test the validity of the proposed change, contending, as it is here contended, that the proposed change was not an amendment, but constituted a complete revision and new charter, and was therefore invalid because not submitted and adopted through the medium of a charter convention which is provided for in the Colorado Constitution, and which is similar in effect to the provision in section 3(a). art. 18, our Constitution for adopting a charter through a board of freeholders.

The court, after an exhaustive review of the decisions upon the question, held the proposed change to be an amendment and not a new charter, and in section 2 of the syllabus said:

"The term 'amendment' being defined as any alteration made or proposed to be made in a bill or motion by addition, change, substitution, or omission. proposals to alter the charter of Denver so as to change the government from one by mayor and legislative council to one by commissioners, and to provide for nonpartisan elections, are amendments, and do not constitute a new charter, where the old charter was left in force as to such matters as civil service, fire and police departments, fiscal management, public health, public utilities, etc., and the new provisions did not provide a complete scheme of city government, and hence such provisions may be submitted by a petition of voters. and do not need to be submitted upon the report of a charter convention, as provided by Const., art. 20, sec. 5."

In the instant case we have a city which in 1911 obtained a charter under the provisions of section 3 (a). art. 18 and since which time has been operating as an independent sovereignty in the management of its municipal affairs under such charter, through which the state, under the pro-

visions of article 18 aforesaid, had granted it the privilege of independent self-government; that is, independent of and free from the state statutes governing cities which have no charter authorizing independent government. In 1926, it sought by the amendment here involved to change its mode of governing and managing its municipal affairs by an amendment to its charter changing its system or plan of municipal government from a commission form to a managerial form. It did not surrender its right of sovereignty nor change article 1 of its charter, which constituted its grant of sovereignty from the state and pertained to its organization and powers in the government of its municipal affairs, but said article 1 was left in full force and effect, among the provisions of which article are those which provide that all existing ordinances shall remain in full force and effect, and that all existing contracts, causes of action and suits, civil or penal, shall in no way be interfered with, and that all obligations either in favor of or against the city shall remain in full force and effect; likewise article 3, pertaining to the selection of employees, through civil service, remains in full force and effect. Article 5, pertaining to ordinances, and article 6, to officers, and article 7, to revenues, remain in full force under the proposed change; article 9, pertaining to various details in municipal affairs and to procedure in elections and to liability of officers and to exemptions from municipal taxation, is left intact.

And, like the Denver case, supra, it sought to change its plan of governing its municipal affairs from its existing plan to a different plan, in the instant case from the commission form to the managerial form. and, as in the Denver case, sought to do so by an amendment under a constitutional provision, which in each case authorizes chartered cities to amend their charter, a right to do which in the instant case had been granted by the state under article 18 of the Constitution. In other words, the state, under said article 18 of the Constitution, granted to Oklahoma City the right of sovereignty over its municipal affairs. Article 18, sec. 3(a), says, "Any city containing a population of more than two thousand inhabitants may frame a charter for its own government." The city framed such a charter, which being found to be not in conflict with the Constitution and laws of the state was approved by the Governor, and thereby became the organic law of the city. The state thereby surrendered authority to govern the city by statute and granted sovereign authority to

the city to govern itself in its municipal affairs. The Constitution contains no provision for recalling such charter, nor for repealing same, nor for abrogating such sovereign authority of the city. The state has no authority under the Constitution, as it now stands, to set aside a city charter once granted. nor to abrogate the authority conferred in a charter. The Constitution of the state nowhere intimates any such authority on the part of the state, but simply provides that a city, in the manner prescribed by the first provision in said article 18, may obtain a charter and the privilege of independent self-government, and then, to further aid the city in its self-government, it provides in the last provision of said article 18 that the charter so rátified may be amended by proposals therefor submitted by the legislative authority of the city to the qualified electors thereof. The city was thus given authority to govern and administer its municipal affairs and also authority to amend its basic laws when found to be inadequate to the satisfactory management of its municipal affairs. The proposed change in question in no wise purported to repeal its charter rights and put itself back upon the state for government under the statutes, nor does the proposed change tend in the slightest to surrender its charter rights, but. retaining such rights, it sought to amend its plan of governing its municipal affairs in the manner and under the express authority granted to it by the last paragraph of said article 18.

And aside from the conclusion to which reason would force us in view of the conditions here presented, the change in question is also clearly within the scope and valid limits of an amendment as defined in Cantini v. Tillman, Brake v. Callison. and People v. Perkins, supra, hence we hold that it is an amendment only and is valid as such. By this we do not mean to hold that each and every provision in such amendment is valid, for its validity to that extent is not properly before us.

In the second proposition, plaintiffs in error complain that under the proposed change the city manager provided for therein would have authority to employ and dismiss the chief of police and other police officers, contending that the police department is not one of purely local concern, but one primarily of state concern, and that the proposed change is in conflict with state laws pertaining to police regulation.

Though this contention is skillfully and ably argued, it cannot be sustained because of the underlying principle that under any form of city government the city police force must necessarily co-operate with the peace officers of the state in keeping the peace of the state, and we see nothing in this feature of the proposed amendment which conflicts with such principle.

In the third proposition, plaintiffs in error contend that the special election at. which the proposed change was adopted was void because the proposed amendment contained two separate and unrelated propositions submitted together under one ballot title. viz.: That section 30, art. 2, of the proposed amendment authorized the city to issue and retire its bonds serially in the manner provided for in the section; that said section is only one of the 64 sections contained in the proposed amendment; that all the other sections relate to one and only one proposition, viz., the alteration of the basic principles of city government from one form to another, and to such other matters as are incident and germane to carrying out and putting in force the new form of government; that the section relating to the issuance and retirement of the city's bonds is purely a financial question, unrelated to any particular form of government and wholly unrelated to the primary purpose of changing from one form of government to another; that being so unrelated. it constitutes a separate and distinct proposition, and that the two incongruous propositions having been submitted together, rendered the election void.

We do not agree with this contention, and cannot sustain same.

The original charter, among other provisions for the management of its municipal affairs, contained also a provision for the issuance and retirement of its municipal bonds, and the legislative authority of the city in submitting the proposed change in the manner of governing its other municipal affairs submitted also the question whether a change in the manner of issuing and retiring its municipal bonds should be adopted. a question which it seems to us has a necessary relation to the system as a whole, especially in view of the fact that it so often becomes expedient to issue municipal bonds to obtain needed improvements. It seems to us to be an essential provision in any system of government. It certainly is not wholly unrelated nor incongruous, and the fact that it was submitted with the other provisions under one ballot title does not render the election void. See Turner v. Ramsey, 63 Okla. 199, 163 Pac. 712; Caruth v. State, 101 Okla. 93, 223 Pac. 186.

The fourth and last proposition submitted by plaintiffs in error is: The election on November 2, 1926, was illegal and void because the resolution passed October 23, 1926, authorizing the mayor to call the special election for November 2, 1926, contained no emergency clause and was therefore inoperative until November 23, 1926. Plaintiffs in error contend. in effect, tnat inasmuch as section 14, art. 9, of the present charter of Oklahoma City adopts and puts in force all of the provisions of chapter 51, Snyder's C. L. 1909, sections 3691 and 3692 of which are now respectively sections 6649 and 6650, C. S. 1921, and inasmuch as said section 6649 provides that no ordinance or resolution of a municipal legislature shall become effective until 30 days after its passage and approval, unless it contains an emergency clause, and that as the resolution submitting the proposed amendment did not become effective on the date of the general election, November 2, 1926, consequently the proposed amendment was not legally adopted and is void.

It appears, however, that said section 6649 is part of chapter 50. C. S. 1921, which relates to initiative and referendum measures, and that the proposed amendment herein involved was not an initiative measure as contemplated by statutes, but was submitted by the legislative authority of the city, and that if any particular provision of said chapter is applicable, it is section 6650, which, among other provisions, contains the following:

"Amendments to any municipal charter may be proposed and submitted to the people by the municipal legislature with or without any initiative petition, but the same shall be filed with the chief clerk for submission not less than 60 days before the election at which they are to be voted upon."

It appears from the above proposition that the proposed amendment with all its provisions must be filed 60 days before it is submitted to be voted upon, and it appears from the record that a resolution to submit the proposed amendment was adopted by the legislative authority of the city in December, 1925, provided the proposed amendment be filed 90 days before the next general election, November 2, 1926, and that it was filed within such time and the proposition submitted at the general election.

But it appears that a subsequent resolution, specifically submitting such proposed amendment at such general election, was adopted October 23, 1926, but that the proposed change, in the meantime, had been fully discussed and had become fully understood by the voters, and that an intensive, thoroughly organized campaign was made in favor of its adoption, and no organized effort in opposition to its adoption; that of the 22,788 votes cast at such general election for Governor, who received the highest number of votes cast, 21,661 were cast on the charter amendment and that it carried by approximately three to one.

No fraud is charged, no lack of notice, scarcity of ballots, nor other opportunity to express the will of the voters is complained of, and under all the circumstances, if there be any merit in the contention, it is strictly a technical one.

Under such circumstances and under the numerous decisions of this court, the will of such an overwhelming majority will not be thwarted because of sheer technical irregularities.

See Lamb v. Palmer, 79 Okla. 68, 191 Pac. 184; Lowe v. Consolidated School Dist. 97, 79 Okla. 115, 191 Pac. 737; Ratliff v. State, 79 Okla. 152, 191 Pac. 1038; 9 R. C. L. 1012, sec. 32; and King v. State, decided Nov. 30, 1926, 40 Okla. App. Ct. Rep. 549 (pending on rehearing).

While we are uninformed as to why the change was desired, and confess not to know the reasons therefor, nor what good can be accomplished under the new form that could not be accomplished under the old one, nor evil avoided under the one that could not be avoided under the other, realizing, as we do, that under whatever form of government we may adopt, the affairs of government must, after all, be administered by human beings, yet whatever the reasons for the change may have been, the verdict shows an overwhelming desire for such change, and after a careful review of the entire subject-matter and analysis of the whole substance before us, we conclude that the judgment should be affirmed, and it is so ordered.

Affirmed.

BRANSON, C. J., and PHELPS, LESTER, HUNT, CLARK, RILEY, and HEFNER, JJ., concur. MASON, J.. not participating.

Note.—See under (1) 28 Cyc. pp. 142, 237, 241, 254. (2) 28 Cyc. p. 502 (Anno). (3) 28 Cyc. p. 243. (4) 20 C. J. p. 152, §181; 28 Cyc. p. 243.