2014 OK 86

**Shaloa EDWARDS, individually, Plaintiff/Appellee,**

**v.**

**CITY OF SALLISAW, a municipal corporation, Shannon Vann, in his capacity as mayor of Sallisaw, Oklahoma, and Bill Baker, in his capacity as city manager of Sallisaw, Oklahoma, Defendants/Appellants.**

No. 112132.

Supreme Court of Oklahoma.

Oct. 21, 2014.

John Robert Montgomery, Montgomery and Montgomery, P.C., Sallisaw, Oklahoma, for the defendants/appellants.

Sam Sexton, III, McCutchen & Sexton, Fort Smith, Arkansas, for the plaintiff/appellee.

TAYLOR, J.

## I. ISSUES

¶ 1 The question before this Court is whether a city charter which directs the city board of commissioners to set the powers and duties of an elected police chief allows the board to limit those powers and duties by removing the police chief's supervisory and management authority over the police department by ordinance. We answer this question in the affirmative.

## II. PROCEDURAL HISTORY

■ ¶ 2 Plaintiff, Shaloa Edwards, the elected police chief,[1] filed a petition for declaratory and injunctive relief against the mayor, city manager, and City of Sallisaw (collectively "Defendants"). Edwards asked the Sequoyah County District Court to invalidate and enjoin the enforcement of Ordi-

---

1. Edwards retired as Sallisaw Chief of Police on November 30, 2013. This Court denied Edwards's motion to dismiss the appeal as moot. We only dismiss an appeal as moot where no

nance 2013–01, which removed his authority to supervise and manage the police department. The Defendants jointly filed a motion for summary judgment. The district court held a summary-judgment hearing and heard witness testimony. All parties then submitted post-hearing briefs in lieu of argument at the hearing. The district court denied the Defendants' summary-judgment motion and issued a permanent injunction against the enforcement of Ordinance 2013–01. The Defendants then filed their petition in error. This Court retained the appeal.

## III. FACTUAL RECORD

¶ 3 The facts are undisputed. The City of Sallisaw, Oklahoma, (Sallisaw), is organized as a municipal corporation through a city charter. The charter establishes a commissioner-manager form of government, vesting "all powers of the City of Sallisaw ... in and exercised by an elective board of commissioners." Charter of the City of Sallisaw, Oklahoma, art. I, § 3. The police chief is elected, but has a limited set of enumerated charter powers. *Id.* art. III. All other police-chief duties and responsibilities are set by city ordinance—a charter duty that falls to the board of commissioners:

The Chief of Police shall enforce the municipal ordinances and the laws and Constitution of the State of Oklahoma and shall have such other powers, duties and functions as may be prescribed by ordinance.

*Id.* art. III, § 3.

¶ 4 The people of Sallisaw elected Edwards as police chief in 2005 and reelected him in 2008 and 2011. Upon his election, Edwards had the following duties as set by the Sallisaw Board of Commissioners:

There is a police department, the head of which is the chief of police, or police chief. The chief of police is an officer of the city, and has supervision and control of the police department. All police officers are officers of the city.

relief can be granted. *Westinghouse Electric Corp. v. Grand River Dam Auth.,* 1986 OK 20, ¶ 17, 720 P.2d 713, 718.

City of Sallisaw Code of Ordinances, pt. II, ch. 54, art. II, § 54–31 (repealed 2013). Edwards supervised and managed the Sallisaw Police Department following this grant of authority from the date of his initial election until the ordinance was repealed.

¶ 5 The board of commissioners met publicly on February 11, 2013, having earlier provided notice of the meeting at city hall, to the local newspaper, and to the city clerk. Edwards received a copy of the meeting agenda prior to February 11th. At the meeting, the board of commissioners discussed a proposed ordinance to repeal and replace section 54–31. Ordinance No. 2013–01 revised the distribution of authority to manage and supervise the police department:

> The Chief of Police is an officer of the City and is authorized to supervise and manage the Police Department; however, the City Manager may assume supervision and management of the Police Department, if the Board of City Commissioners deem [sic] it in the best interest of the City.

City of Sallisaw Code of Ordinances, Ordinance No. 2013–01 (Feb. 11, 2013) [enacted as Sallisaw Code of Ordinances, pt. II, ch. 54, art. II, § 54–31].[2] At the February 11th meeting, Edwards addressed the board of commissioners and presented his case against the proposed ordinance. After Edwards finished, the board of commissioners passed and enacted the new ordinance; a commissioner then moved for the board to assign responsibility for supervising and controlling the police department directly to the city manager for 90 days. The board of commissioners passed the motion.

¶ 6 After February 11, 2013, the Sallisaw City Manager supervised and managed the Sallisaw Police Department, but Edwards retained the title of police chief. Edwards also continued to receive the police-chief salary, and he was able to enforce laws and ordinances, use the police-chief office, wear the uniform, carry a weapon, make arrests, and assist in the formulation of the department's budget with the city manager. The city manager appointed a captain on the police force as supervisor for day-to-day operations; the captain in turn reported to the city manager. The police captain did not supervise Edwards.

## IV. STANDARD OF REVIEW

 ¶ 7 Summary judgment settles only questions of law. *See Pickens v. Tulsa Metropolitan Ministry,* 1997 OK 152, ¶ 7, 951 P.2d 1079, 1082. The standard of review of questions of law is *de novo. Id.* Summary judgment will be affirmed only if the appellate court determines that there is no dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.* n. 1. Summary judgment will be reversed if the appellate court determines that reasonable men might reach different conclusions from the undisputed material facts. *See Runyon v. Reid,* 1973 OK 25, ¶ 15, 510 P.2d 943, 946.

## V. ANALYSIS

### A. Edwards's Allegations

¶ 8 Edwards claimed in his district-court petition that the board of commissioners usurped the inherent authority of the police chief by removing the chief's ability to supervise and manage the police department. Edwards alleged that as an elected official, he retained the ability to manage and supervise the police department despite those duties not being explicitly set out in the city charter. Edwards also argued to the district court that the Defendants violated his due process protections—Ordinance 2013–01 functionally removed him from office without following the procedures outlined by city ordinance or state statute. We address Edwards's arguments in turn.

### B. Construction of Sallisaw's Municipal Charter

 ¶ 9 A municipal charter is a home-rule city's governing constitution.[3] We will

---

2. Ordinance No. 2013–01 included an emergency clause which made it effective upon its passage and approval. City of Sallisaw Code of Ordinances, Ordinance No. 2013–01 (Feb. 11, 2013) [enacted as Sallisaw Code of Ordinances, pt. II, ch. 54, art. II, § 54–31].

3. *In re Initiative Petition on Proposed Charter for City of Okmulgee,* 1923 OK 199, ¶ 9, 89 Okla.

look to rules of construction for constitutions in our analysis of the Sallisaw charter. As with Oklahoma's own governing document, we strictly construe a charter's terms to give effect to the intent of the framers and the people adopting it. *Latting v. Cordell*, 1946 OK 217, ¶ 0, 197 Okla. 369, 172 P.2d 397, 397 (Syllabus by the Court 1). If the terms are "plain and unambiguous," the meaning and intent of the document is found on its face "without resort to judicial rules" of construction. *See Twin Hills Golf & Country Club, Inc. v. Town of Forest Park*, 2005 OK 71, ¶ 6, 123 P.3d 5, 6–7. We look for the document's intent "in the instrument itself," and we must not "search for . . . meaning beyond the instrument." *Latting*, 1946 OK 217, ¶ 0, 172 P.2d at 397 (Syllabus by the Court 1).

¶ 10 The Oklahoma Constitution empowers Oklahoma citizens who live in municipalities exceeding 2,000 people to "frame a charter for [their] own government, consistent with and subject to the Constitution and laws of this State." Okla. Const. art. 18, § 3(a). The municipal charter then becomes the "organic law of the city." *Caruth v. State ex rel. Tobin*, 1923 OK 980, ¶ 4, 101 Okla. 93, 223 P. 186, 187; *In re Initiative Petition*, 1923 OK 199, ¶ 5, 214 P. at 187. Article 18 of the Oklahoma Constitution gives governing and legislating power to these municipalities, commonly referred to as home-rule cities. In fact, municipal law "supersede[s] the laws of the state in conflict therewith, in so far as such general laws attempt to regulate purely municipal matters." *City of Sapulpa v.*

*Land,* 1924 OK 92, ¶ 8, 101 Okla. 22, 223 P. 640, 642. But this Court has demarcated this principle—municipal authority can be overcome despite "chiefly local interest" if "the state has a sovereign interest" in the municipal matter. *Thurston v. Caldwell,* 1913 OK 714, ¶ 10, 40 Okla. 206, 137 P. 683, 687.

¶ 11 With the approval of a municipality's charter, the state has surrendered a portion of its authority by giving home-rule cities sovereignty over their "municipal affairs." *Moore v. Oklahoma City,* 1927 OK 49, ¶ 16, 122 Okla. 234, 254 P. 47, 51. The line between a chiefly municipal affair and a sovereign state interest is not well illuminated. We have recognized specific issues that are of sovereign state interest, including taxation,[4] public education,[5] control and regulation of public highways,[6] and "state control over local police protection."[7] This Court has carved out certain duties and responsibilities of municipal police officers that are of state concern; but we have also left a significant degree of autonomy to home-rule cities to control their police departments.[8] We find where to draw the line in relation to what a home-rule city can authorize by city charter, including the duties and authority of a police chief, from precedent and statutes. We now turn to our jurisprudence.

¶ 12 In *State ex rel. Burns v. Linn,* 1915 OK 1037, 49 Okla. 526, 153 P. 826, this Court held that the state has a "sovereign interest

---

4. *Land,* 1924 OK 92, ¶ 21, 223 P. at 643 ("[I]t must be borne in mind that such municipalities, in exercising the power of taxation, become involved in a matter under our system of government, which is the proper subject of constitutional and general law. This, for the reason that the exercise of the arbitrary power of taxation is subject to the regulation of the supreme sovereign power, which in such case is the state."); *Thurston,* 1913 OK 714, ¶ 10, 137 P. at 686 (identifying a state interest in state control over "local taxation for streets, highways, and bridges; state control over local taxation for

134, 214 P. 186, 187; *see* Maurice H. Merrill, *Constitutional Home Rule for Cities: Oklahoma Version,* 5 Okla. L.Rev. 139, 150 (1952) ("[T]he charter of a home rule city is its constitution, and that such a charter is a grant of power from the state to the city.") (footnote omitted) (internal quotation marks omitted).

schools; [and] state control over local taxation for the public health").

5. *Bd. of Educ. of City of Ardmore v. State ex rel. Best,* 1910 OK 118, ¶ 0, 26 Okla. 366, 109 P. 563, 563 (Syllabus by the Court 1).

6. *Constant v. Brown,* 1941 OK 205, ¶ 0, 189 Okla. 147, 114 P.2d 477, 477 (Syllabus by the Court 1) ("Control and regulation of the public ways of a municipality are reserved to the State, and such powers may be exercised by the municipality only to the extent of the authority to that end delegated by the Legislature.").

7. *Thurston,* 1913 OK 714, ¶ 10, 137 P. at 686.

8. *Compare State ex rel. Burns v. Linn,* 1915 OK 1037, ¶ 0, 153 P. 826, 826 (Syllabus by the Court 3), *with Moore,* 1927 OK 49, ¶ 18, 254 P. at 51.

in the enforcement of its general laws against the traffic in intoxicating liquors, against gambling and prostitution, within the territorial limits of the city of Tulsa." *Id.* ¶ 0, 153 P. at 826 (Syllabus by the Court 3). It was alleged by grand jury that the police chief in Tulsa (a home-rule city) allowed, or failed to enforce the laws against, gambling, liquor, and prostitution. *Id.* ¶ 1, 153 P. at 827. This Court ruled that enforcement of laws relating to the prohibition against liquor, prostitution, and gambling were not merely municipal in nature as the laws "operate[d] throughout the entire state . . . and are matters in which every citizen of the state has an interest." *Id.* ¶ 8, 153 P. at 829. A municipality cannot maintain sole control over the duties and powers of its police chief to enforce state laws restricting intoxicating liquor, gambling, and prostitution; these are state interests, controlled by statute, that a city charter cannot co-opt.

¶ 13 Twelve years later, this Court decided *Moore,* 1927 OK 49, 254 P. 47, where the City of Oklahoma City passed an amendment to its city charter to transform the city from a commission form of government to a managerial form of government. *Id.* ¶ 15, 254 P. at 50. Albeit briefly, this Court addressed a concern for our purposes: did the city manager's power to hire and fire the police chief and other officers under the new managerial form of government, solely vested in the manager, infringe on matters which were state concerns, rather than purely local matters. *Id.* ¶¶ 17–18, 254 P. at 51. This Court

answered in the negative and affirmed the city's authority to set the powers of a city manager and a local police chief by charter:

> [U]nder any form of city government, the city police force must necessarily co-operate with the peace officers of the state in keeping the peace of the state, and we see nothing in this feature of the proposed amendment which conflicts with such principle.

*Id.* ¶ 18, 254 P. at 51. In keeping with *Linn,* a city charter can set duties of its city manager and city police chief, but a charter cannot supersede the statutory duty of the municipal police chief to uphold the laws of the state.

¶ 14 *Moore* and *Linn* create a framework for what duties a home-rule city can set by charter for its police chief.[9] A municipality cannot alter its duty to enforce enumerated state laws and the Oklahoma constitution by city charter.[10] But we have allowed home-rule cities leeway to set the duties of police chiefs beyond the enforcement of state laws and ordinances. We must also look to statutes for other enumerated police-chief duties. The Legislature has vested three specific duties in the position of police chief: (1) the authority "to dispose of personal property or money or legal tender . . . which has come into the possession of the chief of police in any matter"; (2) the ability to appoint "reserve municipal police officers"; and (3) the duty to enforce state laws and municipal ordinances. 11 O.S.2011 §§ 34–104, 34–101(A), 34–102(A).[11] The Legislature has not

---

9. *City of Durant v. Cicio,* 2002 OK 52, 50 P.3d 218, is distinguishable here in the context of police protection in home-rule cities. For recent precedent to distinguish *Cicio,* see *City of Jenks v. Stone,* 2014 OK 11, ¶ 20, 321 P.3d 179, 185. In *Cicio,* the City of Durant was not a home-rule city, but organized and run by state statutes. *Cicio,* 2002 OK 52, ¶ 6, 50 P.3d at 220.

10. We have refused to allow home-rule municipalities to outlaw what a state statute has specifically allowed as a sovereign state interest. *Sparger v. Harris,* 1942 OK 418, ¶ 19, 191 Okla. 583, 131 P.2d 1011, 1014 (invalidating a city ordinance which outlawed the sale of 3.2 beer on Sunday as a state statute explicitly allowed its sale).

It must be noted that where a charter conflicts with a statute, a charter may supersede the statute if "[i]t in no manner interferes with or in-

fringes upon matters of the state at large, or affects its people generally; and, in the absence of such provision of the charter being in conflict with any provision of the Constitution, it supersedes the statute." *Lackey v. State ex rel. Grant,* 1911 OK 270, ¶ 20, 29 Okla. 255, 116 P. 913, 918; *see City of Muskogee v. Senter,* 1939 OK 375, ¶ 13, 186 Okla. 174, 96 P.2d 534, 535 ("In this jurisdiction, however, cities may adopt charters containing provisions not in accord with the general law and in so far as such charter provisions conflict with the state law on subjects relating to purely municipal matters, the state law is thereby superseded.").

11. As the day-to-day responsibilities of a police chief are not set out by charter, we need not analyze whether the Sallisaw city charter supersedes any existing state statute. *See Lackey,* 1911 OK 270, ¶ 20, 116 P. at 918.

vested any other responsibilities or duties in municipal police chiefs.

¶ 15 We have not before interfered with a home-rule city's right to set the administrative day-to-day duties of its police chief. And without the Legislature delineating specific duties for police chiefs to manage and supervise the police department, we will not create one here. We read article III, section 3 of the Sallisaw city charter strictly as its language is plain and unambiguous. Under the city charter, a police chief can freely enforce local ordinances and state laws—any other duty must be found in state statute or Sallisaw's ordinances. Ordinance 2013–01 properly followed the requirements of the city charter by setting the powers and duties of the Sallisaw police chief—even if those duties and responsibilities were minimal. Even after Ordinance 2013–01 was enacted, Edwards retained the title, salary, office, and uniform of the Sallisaw Chief of Police. The Sallisaw charter empowers the board of commissioners to set all powers and duties of the Sallisaw police chief not detailed in the city charter by ordinance. Ordinance 2013–01 properly sets out those duties and responsibilities of the Sallisaw chief of police.[12]

## C. Removal of a Police Chief's Inherent Powers

■ ¶ 16 Edwards contends that an elected police chief has inherent powers to supervise and manage a police department. Drawing his support from his definition of *police chief*, defining the phrase as one who supervises and manages a department, Edwards asks this Court to recognize that elected police chiefs have inherent authority to

manage and supervise the department without interference from other local municipal powers.

■ ¶ 17 Edwards's contention directly contradicts the plain language of the Sallisaw city charter. The language is unambiguous. The charter solely directs the board of commissioners to set all powers and responsibilities of the police chief by ordinance (with the exception of those defined by statute). Municipal officers can only exercise powers which are "expressly granted or necessarily to be inferred as incidental to those expressly granted." *Nottingham v. City of Yukon*, 1988 OK 130, ¶ 5, 766 P.2d 973, 974–75.[13] The duty to supervise and manage the police department is not express in the charter. The plain language of the charter also leads us to conclude that the power to manage and supervise the police department is not necessarily to be inferred as incidental to the police chief's charter powers.[14] The plain language expressly vests only one duty—enforcement of state law and municipal ordinances—with the police chief. For us to find that the duty to manage and supervise the police department can be inferred as incidental to the charter's one express power would be a violent misreading of the plain language of article III, section 3 of the charter. Any additional authority not found in statutes for the police chief can be found only in city ordinances. Edwards fails to point us to any authority that would support his contention that the police chief has inherent authority to supervise and manage the police department. We reject the contention that the Sallisaw Chief of Police has inherent authority to

12. The district court ruled that because the emergency motion placing supervision and control of the police department in the city manager was authorized for only 90 days, after the expiration of 90 days, Edwards was reinstated as police chief. As Edwards was never removed from his elected position, he cannot be reinstated. We summarily dismiss Edwards's argument that he was reinstated after the 90–day motion expired.

13. In *Nottingham*, we refused to find that the city manager had inherent power to "settle and compromise claims" when the city charter was silent. 1988 OK 130, ¶ 5, 766 P.2d at 974–75. The Yukon city charter allowed the city to settle and compromise claims, but the charter did not grant

that power to the city manager. We held that the power to settle claims was not "incidental to the city manager's administrative power to hire and fire." *Id.* ¶ 5, 766 P.2d at 975.

14. The Supreme Court has long refused to rewrite city charters to create inherent powers in city officials. *City of Muskogee v. Senter*, 1939 OK 375, ¶ 15, 96 P.2d 534, 535–36. In *Senter*, this Court refused to read the Muskogee city charter as placing "dictatorial powers" in the mayor to sign contracts without the approval of the other required authorities. *Id.* To find these inherent powers as created in the city charter was to do "violence to its natural meaning." *Id.*

supervise and manage the Sallisaw Police Department.

### D. Violations of Edwards's Due Process Protections

¶ 18 The district court ruled that the Defendants violated Edwards's procedural protections under both state law and local ordinances by ousting him from office. The Sallisaw Chief of Police can be removed from office by recall election or for cause, which is a method detailed by statute. Charter of the City of Sallisaw, Oklahoma, art. VI, § 1.; *id.* art. III, § 5; 11 O.S.2001 § 8–107. Both processes for removal require the city to follow specific procedures. Sallisaw did not initiate either process. But neither process was required as Edwards was not removed from office. He did not lose his position as chief of police, and he retained his salary and other privileges of the position. We reject Edwards's argument that Ordinance 2013–01 was an end-around the mandated procedures in the city charter and applicable state statutes to remove an elected official from office.

¶ 19 Edwards implicitly argues that the defendants denied him due-process protection under the United States and Oklahoma Constitutions for the removal of the ability to supervise and manage the police department—what he appears to claim is a property right under both constitutions. Edwards does not point us to any authority to support his argument. "The due process clauses of the United States and Oklahoma Constitutions provide that citizens cannot be deprived of their rights to life, liberty or property without first receiving notice and a meaningful opportunity to appear and be heard." *Daffin v. State ex rel. Okla. Dep't of Mines,* 2011 OK 22, ¶ 16, 251 P.3d 741, 746; *see Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). We have specifically ruled in the context of teacher tenure that a teacher has a property right in continued employment, but does not have a property right in a specific position. *Maupin v. Indep. Sch. Dist. No. 26,* 1981 OK 90, ¶ 4, 632 P.2d 396, 399. By analogy, Edwards has no property right in any job duty that may have been

associated with the Sallisaw Chief of Police at one time. Edwards continued on as police chief and retained the emoluments of office. We reject Edwards's contention that he had a property right to supervise and manage the Sallisaw Police Department.

¶ 20 The process Edwards was afforded by the Sallisaw Board of Commissioners complied with due-process protections even though a property right was not implicated. Due-process protections require notice and "the opportunity to be heard in a meaningful time and in a meaningful manner." *Flandermeyer v. Bonner,* 2006 OK 87, ¶ 10, 152 P.3d 195, 198–99; *Loudermill,* 470 U.S. at 541, 105 S.Ct. 1487. The Sallisaw Board of Commissioners publicly discussed Ordinance 2013–01 on February 11, 2013. Notice of the meeting was provided to Edwards. At that meeting, the board of commissioners allowed Edwards to speak at length regarding the proposed ordinance and his duties as police chief. "Due process requires an orderly proceeding adapted to the case in which the parties have an opportunity to be heard, and to defend, enforce and protect their rights." *Malone v. Malone,* 1979 OK 21, ¶ 4, 591 P.2d 296, 298. Here, Edwards was given adequate notice and the opportunity to be heard. The Defendants did not violate Edwards's procedural due process protections. And Edwards's arguments of due process violations for failure to follow stated policies are unpersuasive as we have already ruled that Edwards was not ever removed from office; he retained the position and salary of police chief after the board of commissioners enacted Ordinance 2013–01.

### VI. CONCLUSION

¶ 21 A home-rule city has a sovereign right to govern itself in purely municipal matters. Here, the Sallisaw Board of Commissioners had the ability to set out the duties and authority of a police chief's day-to-day responsibilities. The Legislature has given leeway to home-rule cities to craft these day-to-day duties and responsibilities. We will not question how a city charter allocates the authority to set the police chief's duties and responsibilities if not contrary to statute, precedent, or Constitution. An ordi-

nance may establish those duties and responsibilities as long as the ordinance comes from a grant of authority in the city charter. The Sallisaw city charter grants that authority to the board of commissioners. The district court's order and permanent injunction is vacated. We remand this appeal to the district court for proceedings consistent with this opinion.

**DISTRICT COURT ORDER VACATED; REMANDED WITH INSTRUCTIONS.**

COLBERT, C.J.; REIF, V.C.J.; and WATT, WINCHESTER, EDMONDSON, TAYLOR, COMBS, and GURICH, JJ., concur.

KAUGER, J., concurs in result.