CITIES AND TOWNS: OFFICERS
A municipal police officer may leave the corporate limits of the municipal entity which he serves to speak with witnesses and other police officers concerning a crime committed in his jurisdiction. A municipal police officer may leave the municipal entity which he serves to investigate and gather evidence concerning a crime committed in his jurisdiction, but possesses no greater authority than that of a private citizen in this endeavor. In the absence of any ordinance or charter restrictions, the municipal police officer may make use of the municipality's vehicles and other equipment. Such usage, however, is subject to the provisions of 11 O.S. 16.4 [11-16.4] (1976). A municipal police officer, while in the employ of the munici pality, may assist other law enforcement agencies in an investigation. A municipal police officer is an "officer" within the meaning of 51 O.S. 6 [51-6] (1971). A municipal police officer may not be made a deputy sheriff while in the employ of the municipality under 19 O.S. 542 [19-542], 19 O.S. 545 [19-545] (1971), because both positions are "offices" within the meaning of 51 O.S. 6 [51-6] (1971) (ed note: dual office holding). However, a municipal police officer may be deputized to do a particular act under 19 O.S. 547 [19-547] and 19 O.S. 548 [19-548] (1971). The Attorney General has received your request for an opinion wherein you ask the following questions: "1. Can a municipal police officer, in investigating a crime committed within the municipality, speak with witnesses, as well as other law enforcement officers, outside the police officer's municipality? "2. Can a municipal police officer investigate and gather evidence, but not arrest, search or seize evidence on suspects, outside the municipality in which the officer is employed concerning a crime committed within the municipality? "2a. Can a police officer who is so investigating and gathering evidence utilize the municipality's police vehicles and equipment? "3. Can a municipal police officer, upon the request of federal or state crime investigation authorities, assist said authorities in an investigation while employed by the municipality as a police officer? "4. Is a municipal police officer an 'officer' within the meaning of 51 O.S. 6 [51-6] (1971)? "5. May a municipal police officer be made a deputy sheriff while in the employ of the municipality?" In response to your first question, your attention is directed to two prior Attorney General Opinions. In 6 Okl. Op.A.G. 211 (Opinion No. 73-249), it was held that a police officer commissioned by a municipality is exempt from statutes prohibiting the carrying of firearms when en route to or returning from the place of his performance of his duty, or when he is outside his jurisdiction exercising some official duty authorized by law. Similarly, in Attorney General Opinion No. 76-391, dated February 7, 1977, it was held, in relevant part, that when a police officer is acting outside of the territorial limits of his employing municipality upon directives of the employing municipality, and he commits some act which gives rise to a claim against the municipality, a factual determination would have to be made in order to determine if the police officer was acting in a proprietary or governmental capacity so as to ascertain the municipality's liability, if any. It is apparent, therefore, 1 that an officer's excursions from his municipality have been tacitly sanctioned in prior opinions by the Attorney General. However, it will be necessary to ascertain the relevant statutory and case law restrictions and powers applicable to officers in situations described in your first question and other related issues in your request. The duties of a city policeman or marshall are set forth in 11 O.S. 574 [11-574], 11 O.S. 675 [11-675] (1971). 11 O.S. 575 [11-575] reads as follows: "The policemen of the city shall have power to arrest all offenders against the laws of the state or city, by day or night, in the same manner as the marshall, and keep them in the city prison or other place to prevent their escape until a trial can be had before the proper officer." Similarly, the Attorney General would direct your attention to 21 O.S. 99 [21-99] (1971): "The term 'peace officer' signifies any sheriff, constable or policeman, and any other officer whose duty it is to enforce and preserve the public peace." It is undisputed, therefore, that a city police officer is charged with the protection of the public on a grant of authority from the state through the municipal entity. In that regard, the following is pertinent: "A municipal corporation in its historical and proper sense is the incorporation by the authority of the government of the inhabitants of a particular place or district and authorizing them in their corporate capacity to exercise subordinate specified powers to legislation and regulation with respect to their local and internal concerns. This power of local government is the distinctive purpose and the distinguishing feature of a municipal corporation proper." Ex Parte Simmons,4 Okl. Cr. 662, 112 P. 951 (1911). The power to arrest with or without a warrant and to search and seize are necessary incidents, therefore, of the duty to enforce and preserve the public peace. 22 O.S. 196 [22-196] (1971) et seq. Your inquiry, obviously, invokes the question of permissible activity of an officer outside the city or corporate limits of the municipal entity he serves. In the recent case of Graham v. State, Okl. Cr., 560 P.2d 200 (1977), the Oklahoma Court of Criminal Appeals held that, generally, a police officer's authority cannot extend beyond his jurisdiction and that a seizure of a contraband substance by a police officer outside of the corporate limits of the city which he serves, was illegal. This view is the prevailing view in this country. Britain v. United States Fidelity Bank,219 Ky. 465, 293 S.W. 956 (1927). People v. Taylor,33 Cal.App.2d 760, 85 P.2d 978 (1938), Weeks v. State,132 Tx.Cr. 524, 106 S.W.2d 275 (1937). The Court of Criminal Appeals did, however, recognize that there were exceptions to the general rule. If a police officer is in hot pursuit of a person who has committed an unlawful act within his jurisdiction, then the police officer may apprehend the individual outside his jurisdiction. Graham, supra. United States v. Bragg, 189 F.2d 367 (10th Cir. 1951). Furthermore, one municipality can request the assistance of another municipality's police officers pursuant to 11 O.S. 20.6 [11-20.6] (1971). You will note that in Oklahoma, by statute, a county sheriff is permitted to conduct an investigation outside of his county if requested or authorized by the District Attorney. 19 O.S. 524 [19-524] (1971). The Court in Graham, supra, negated the concept that, in Oklahoma, a policeman is a state, rather than a city officer. United States v. Bragg, supra. See also City of Lawton v. Harkins, 34 Okl. 545, 126 P. 727
(1912). The view that a police officer derives his authority from statute is a well accepted proposition: "The office of policemen was unknown at common law, and whenever such office exists, it is the creation of statute or municipal charter or ordinance." McQuillan, MUNICIPAL CORPORATIONS, 3rd E. (1972). The dictates of the Graham case, therefore, appear to set the standards for traditional police conduct outside the corporate limits of the municipality absent specific statutory authority. However, the activities addressed by Graham are concerned with arrest and search and seizure under color of authority of law as a police officer. Activity by a municipal police officer outside the entity's corporate limits has been sanctioned by this state's Court of Criminal Appeals, albeit as a private citizen. In Moran v. State, 95 Okl. Cr. 6, 237 P.2d 920 (1951), the Court stated: "Where a police officer finds an accused outside the city limits of municipality on a public highway and in a drunken condition, even though said officer held no commission as a county or state officer, still, by provision of 22 O.S. 202 [22-202] (1941), he had a right and it was his duty to arrest said person, and he had the further right to take possession of intoxicating liquor observed in the front part of the accused's ditched automobile." See also Williams v. State, Okl. Cr., 373 P.2d 91 (1962). Title 22 O.S. 202 [22-202] (1971) is the analogous statute authorizing "private persons" to make a citizen's arrest. The case, therefore, provides that officers outside the jurisdiction are empowered to make a citizen's arrest. The statutory authority in this regard is as follows: "Arrest by a private person — A private person may arrest another: "1. For a public offense committed or attempted in his presence. "2. When the person has committed a felony, although not in his presence. "3. When a felony has been in fact committed, and he has reasonable cause for believing the person to have committed it." Although the practice has been restricted in recent cases, for failure to conform to the dictates of the statute, it appears to be a viable one. Smith v. State, Okl. Cr.,510 P.2d 964 (1973). These cases and statutes are cited to you in order to demonstrate that there are instances where a police officer may find it necessary to be outside the territorial limits of his jurisdiction, but he will not, however, be vested with the powers that he may have within the corporate limits of the municipality which he serves. The absence of the right to search and seize are such limitations. Although the legislature has not conferred upon peace officers of a municipal corporation the power to make arrests outside of their territorial jurisdiction as a police officer, nor the right to search and seize in that capacity, it has charged them with the duty set forth in 21 O.S. 99 [21-99] (1971), supra: ". . . whose duty it is to enforce and preserve the public peace." In consideration of whether a municipal police officer who is investigating a crime committed within his municipality may communicate with officers and witnesses from another jurisdiction, the following is pertinent: "It is the duty of the courts in construing a statute to ascertain legislative intent. If the language be clear, it is conclusive. When the language of the act is dubious, the court in construing it will consider the intent of the law." Miller v. State, Okl. Cr., 267 P.2d 155 (1953). It logically follows that a police officer may be required to leave his jurisdiction to fulfill his obligation in enforcing and preserving the public peace in the municipality which he represents. However, the employing municipality may see fit to restrict the movement of its officers outside the limits of the municipality through directive, ordinance or charter provision. The mere directive of the employing municipality for action by its officers outside of the corporate limits, will not serve, under existing law, to enlarge the powers and authority of the municipal police officer as his power, as a policeman, ceases when he leaves the confines of the corporate entity. When he leaves the corporate limits, he becomes a "private citizen" in terms of his traditional powers to arrest, search and seize. He may, however, leave the jurisdiction which employs him to speak with witnesses as well as other law enforcement officers. There is no prohibition under current Oklahoma law for this type of activity. He does so, however, with diminished powers and authority. Your second question appears related to your first question in that you ask whether a municipal police officer may investigate and gather evidence, but not arrest, search or seize evidence, outside the municipality which employs the officer concerning a crime committed within the municipality. Your attention is directed to the answer to the first question concerning activities of a municipal police officer outside his municipality. "Investigation" is defined as follows: "To follow up step by step by patient inquiry or observation; to trace or track mentally; to search into; to examine and inquire into with care and accuracy; to find out by careful inquisition; examination, the taking of evidence; a legal inquiry." Blacks Law Dictionary, 4th Ed. (1968). It is apparent that the activity to which you speak approaches the exercise of authority prohibited by the Court of Criminal Appeals in Graham v. State, supra, as it involves more than mere discussion with witnesses and other law enforcement officers. Again, it must be emphasized that a police officer possess no greater powers than those of an ordinary citizen, except in those enumerated instances previously described, when he is outside the jurisdiction which is the source of his powers as a law enforcement officer. That is not to say, however, that he may not proceed to another jurisdiction in the investigation of a crime. Care must be taken in this regard, however, that the municipal police officer not conduct the "investigation" under "color of law." That term has been defined to mean: "The appearance or semblance, without the substance, of legal right." Blacks Law Dictionary, 4th Ed. (1968). The power to arrest, search and seize is vested in the municipal officers of this state. That power or authority, unless enlarged by statute, ceases at the corporate boundaries of the employing municipality. He may, however, investigate the commission of a crime outside the jurisdiction but is vested with no more authority than a private citizen in terms of the compelled production of evidence under color of authority, whether it be demonstrative or oral. In the investigation outside the municipality, you ask whether it is permissible to use the vehicles and equipment of the municipality which employs the police officer. Your attention is directed once again to Opinion of the Attorney General 76-391, wherein activity outside a municipal entity was tacitly approved. As cited in that opinion, the case of City of Sand Springs v. Gray, 182 Okl. 248, 77 P.2d 56 (1938), did not condemn the use of city-owned vehicles outside the municipality. Similarly, in the case of Shearer v. City of Tulsa, 197 Okl. 454, 172 P.2d 603 (1946), the Supreme Court recognized that the use of city-owned garbage trucks were properly used outside of the city limits as part of a governmental function. A necessary incident in the investigation outside the municipality of a crime committed within the municipality would be the use of vehicular transportation. Your attention is directed to 11 O.S. 16.4 [11-16.4] (1976), which concerns the liability insurance required to be carried by the municipality in terms of such activity and the issue of governmental function vs. proprietary function. Suffice it to say, however, that there is no statutory prohibition for such usage. In your third request, you ask whether, upon the request of federal or state crime investigation authorities, municipal police officers may assist them while employed by the municipality as police officers. Your question does not describe the situs of the investigation, but for purposes of this opinion, it will be assumed that it involves an area both within and outside the municipality. Effective law enforcement is an area which is noteworthy when the position of the city as an agent of the state is viewed. The following is cited for your consideration: "The city police force must necessarily cooperate with the peace officers of the state in keeping the peace of the state." Moore v. Oklahoma City, 122 Okl. 234, 254 P. 47 (1927). The relationship of a city and the state is noted further: "The purposes of a municipal corporation are two-fold: To assist in the government of the state as an agent of the state and to promote the public welfare generally, and the other is to regulate and administer the local and internal affairs of the territory which is incorporated for the advantage of the urban community embraced within the corporate boundaries." McQuillan, MUNICIPAL CORPORATIONS, 2.209 (1971). There is an apparent view that local and state law enforcement cooperation is desirable. The State of Oklahoma has created a state agency responsible for law enforcement. 74 O.S. 150.1 [74-150.1] (1976). The responsibilities and duties of the Oklahoma State Bureau of Investigation are as follows: "1. To maintain scientific laboratories to assist all law enforcement agencies in the discovery and detection of criminal activity; "2. To maintain fingerprint and other identification files; "3. To operate teletype, mobile and fixed radio or other communications systems; "4. To conduct schools and training programs for the agents, peace officers and technicians of this state charged with the enforcement of law and order and the investigation and detection of crime; "5. To assist all law enforcement officers and district attorneys when such assistance is requested, in accordance with the Policy determined by the Commission; "6. To investigate and detect criminal activity as directed by the Governor." (Emphasis added) 74 O.S. 150.2 [74-150.2] (1976). It is further noted that: "The officers and agents of the State Bureau of Investigation, and such other employees as the Director of the Bureau of Investigation shall designate to perform duties in the investigation and prevention of crime and the enforcement of the criminal laws of the State, shall have and exercise all the powers and authority of peace officers, including the right and power of search and seizure." 74 O.S. 150.8b [74-150.8b] (1976). Obviously the agents of the Oklahoma State Bureau of Investigation are statutorily mandated to render law enforcement assistance to police officers in this state upon request and in accordance with the policies of the Oklahoma State Bureau of Investigation Commission. In Oklahoma, there appears to be situations in which city governments, as agents of the State, may not act autonomously but must involve themselves in the "wider public interest." City of Wewoka v. Rodman, 172 Okl. 630,46 P.2d 334 (1935). Law enforcement, arguably, is such an interest and, in view of the express legislative authority concerning state and local law enforcement cooperation, such cooperation would appear to be permissible. Your attention is further directed to the provisions of the Interlocal Cooperation Act found at 74 O.S. 1001 [74-1001] — 74 O.S. 10008 [74-10008] (1969). The fact that the assistance sought may emanate from the state authority does not change the result that, in this State, cooperation between law enforcement agencies has been fostered. In that regard, the concept of permissible local law enforcement cooperation with federal agencies would, by analogy, be sanctioned. It has been held that: "It must always be borne in mind that the constitution, laws and treaties of the United States are as much a part of the law of every state as its own local laws and constitution." Hauenstein v. Lynham, 100 U.S. 483, 490
(1880). Local municipal officers are in a position to assist other law enforcement agencies in the effort against crime on a local and statewide level. Therefore, your question must be answered in the affirmative. A municipal police officer may give assistance to other law enforcement agencies upon request. In your fourth question, you ask whether a municipal police officer is an "officer" within the meaning of 51 O.S. 6 [51-6] (1971). That statute provides: "Except as may be otherwise provided, no person holding an office under the laws of the State and no deputy of any officer so holding any office, shall, during his term of office, hold any other office or be the deputy of an officer holding any office, under the laws of the state . . ." In prior Attorney General Opinions, this provision has been interpreted to the extent that, unless the Oklahoma Legislature provides to the contrary, no person who holds a state, county, municipal or other position, which as a matter of fact and law, constitutes an "office" as contemplated by the statutes or any deputy of such office, may occupy another such "office" or be the deputy of said office. Therefore, the sole question raised by your request for opinion is whether the position of municipal police officer is an "officer" within the meaning and contemplation of 51 O.S. 6 [51-6] (1971). In the case of State v. Sowards, 64 Okl. Cr. 430, 82 P.2d 324
(1938), the Court in paragraphs two and three of its syllabus, held: "2. A public office is the right, authority, and duty created and conferred by law, by which for a given period, either fixed by law, or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by and for the benefit of the public. The individual so invested is a public officer. "3. A public officer, as distinguished from an employee, is one whose duties are in their nature, public, that is, involving in their performance the exercise of some portion of the sovereign power whether great or small, and in the performance of which the public is concerned. Where an employment is a continuing one, which is defined by rules prescribed by law and not by contract, such a charge or employment is an office, and the person who performs it is an officer." To the same effect, see Oklahoma City v. Century Indemnity Company, 178 Okl. 212,62 P.2d 94 (1936), Farley v. Board of Education of City of Perry, 62 Okl. 181, 162 P. 797 (1917). In reiteration, it should be noted that the provisions of 51 O.S. 6 [51-6], supra, apply not only to state officers, but to persons "holding an office under the laws of the state" and their deputies. In prior opinions of the Attorney General, this provision has regularly been construed as pertaining to all public officers and not merely those holding state offices as such. It appears that an indispensable element of a "public office", as distinguished from employment, is that the duties of an office shall involve an exercise of some portion of the sovereign power. In other jurisdictions, this criterion has been determinative in holding that a police officer was a public officer. Morris v. Parks,156 Or. 481, 28 P.2d 215 (1934), wherein it was held that the duty of a law enforcement officer, in enforcing the law and making an arrest, involves the exercise of sovereign power. In fact, the great weight of authority indicates that police officers are held to be public officers. 156 ALR 1356. In Oklahoma, your attention is directed to the case of Cravatt v. City of Oklahoma City, Okl., 295 P.2d 807
(1356), wherein the Supreme Court of Oklahoma held that the city, in maintaining and operating a police department, was performing a "governmental function." A grant of authority extends from the state of municipalities and they are not free to govern themselves independent of legislative direction. City of Sapulpa v. Land, 101 Okl. 22, 223 P. 640 (1924). In this regard, the duties and powers of a police officer emanate from the sovereign, the State of Oklahoma. 21 O.S. 99 [21-99] (1971). The municipal corporation or entity may create the position and appoint the officer but he is charged with the enforcement of all state and municipal laws within his jurisdiction based on his grant of authority from the State of Oklahoma through the auspices of the municipal corporation. It is apparent therefore, that a municipal police officer is a "public officer" within the meaning of 51 O.S. 6 [51-6] (1971), as he is vested with authority which involves the exercise of a function of sovereign power of the State of Oklahoma. His duties are in their nature public and the public is concerned in the performance of them. In his position, the municipal police officer does exercise the powers for the benefit of the public. In the fifth question, you inquire whether a municipal police officer may be made a deputy sheriff while in the employ of the municipality. In Attorney General Opinion No. 75-265, dated October 2, 1975, it was stated that a county sheriff could appoint deputies in three basic categories. The first category includes the regular salaried staff as provided by 19 O.S. 541 [19-541] — 19 O.S. 542 [19-542] (1971), based upon the population of the county. The second category consists of any number of additional deputies who are commissioned to preserve the peace and dignity of the county. Individuals in these categories must be bonded, commissioned and certified pursuant to 70 O.S. 3311 [70-3311] (1974). The third category of deputies extends to those individuals deputed to do a particular act under the provisions of 19 O.S. 547 [19-547], 19 O.S. 548 [19-548] (1971). A person deputed under this provision is not subject to the dictates of Section 3311 and whose appointment lapses upon the accomplishment of the act for which the person is deputed. Title 19 O.S. 547 [19-547] (1971) provides: "Each sheriff may appoint such number of deputy sheriffs as the business of his office may require, but shall appoint only such persons as the Board of County Commissioners approve. For the official acts of his under-sheriff and deputy sheriffs, he shall be responsible, and may revoke such appointments at his pleasure. He, or the under-sheriff, may in writing depute certain persons to do particular acts. The sheriff in his sureties shall be responsible on his official bond for the acts and omissions of his under-sheriff and deputy sheriffs, and also of persons deputed to do particular acts." Your attention is directed once again to the dictates of 51 O.S. 6 [51-6] (1971), which was discussed in the prior question and wherein a police officer was held to be an "officer" within the meaning of the statute. In Attorney General Opinion No. 63-449, dated September 27, 1963, the question was asked whether an Undersheriff in a county could accept employment as a City Marshall in a town located in the same county. The Attorney General answered the question in the negative as it was a violation of 51 O.S. 6 [51-6] (ed. note: Dual Office Holding). In 7 Okl.Op.A.G. 24 (Opinion No. 74-118), it was held that a deputy sheriff was an "officer" within the meaning of the statute, and, hence, was incapable of holding employment as a municipal judge which is likewise an "officer" under the law of this State. In the case of Smith v. State, Okl. Cr., 510 P.2d 962 (1973), previously discussed, the Court of Criminal Appeals, in passing upon the arrest powers of a campus policeman, stated the following: "It is our opinion that an appointment under this act 19 O.S. 548 [19-548] (1971) applies to situations where the sheriff deputizes a person for one act or one incident only and upon completion of this act, his powers as a deputy terminates . . . This is not to say that the sheriff under Section 548, supra, cannot deputize a campus policeman to service warrants, etc., but his powers as a deputy terminates upon the completion of the particular act authorized to perform." In the case, it was held that a sheriff could not give a campus policeman a continuous grant of authority to enforce the laws on property surrounding a university campus because under 19 O.S. 548 [19-548], the grant could only extend to a particular act upon completion of which the authority would terminate. Significantly, the Court did not prohibit the use of a grant of authority by a sheriff to a campus police officer to do a particular act. A municipal police officer, therefore, may not be commissioned as a deputy sheriff under 19 O.S. 542 [19-542], 19 O.S. 545 [19-545] (1971), while employed by the municipality because both positions are "offices" within the meaning of 51 O.S. 6 [51-6] (1971). However, a municipal police officer may be deputized under 19 O.S. 547 [19-547], 19 O.S. 548 [19-548] (1971), to do a particular act. Such deputization is permissible in view of 51 O.S. 6 [51-6] (1971), because such appointment is not continuous and lapses upon the accomplishment of the particular act. It is, therefore, the opinion of the Attorney General that your questions be answered as follows: 1. A municipal police officer may leave the corporate limits of the municipal entity which he serves to speak with witnesses and other police officers concerning a crime committed in his jurisdiction. 2. A municipal police officer may leave the municipal entity which he serves to investigate and gather evidence concerning a crime committed in his jurisdiction, but possesses no greater authority than that of a private citizen in this endeavor. 2a. In the absence of any ordinance or charter restrictions, the municipal police officer may make use of the municipality's vehicles and other equipment. Such usage, however, is subject to the provisions of 11 O.S. 16.4 [11-16.4] (1976). 3. A municipal police officer, while in the employ of the municipality, may assist other law enforcement agencies in an investigation. 4. A municipal police officer is an "officer" within the meaning of 51 O.S. 6 [51-6] (1971). 5. A municipal police officer may not be made a deputy sheriff while in the employ of the municipality under 19 O.S. 542 [19-542], 19 O.S. 545 [19-545] (1971), because both positions are "offices" within the meaning of 51 O.S. 6 [51-6] (1971). However, a municipal police officer may be deputized to do a particular act under 19 O.S. 547 [19-547], 19 O.S. 548 [19-548] (1971). (MICHAEL P. KANE) (Dual Office Holding) ** See: Opinion No. 90-032 (1990) ** ** See: Opinion No. 91-656 (1991) (unpublished) ** ** See: Opinion No. 91-572 (1991) (unpublished) ** ** See: Opinion No. 92-522 (1992) (unpublished) ** ** See: Opinion No. 88-591 (1988) (unpublished) ** ** See: Opinion No. 95-048 (1995) **